### UNITED STATES of America, Plaintiff-Appellee,

v.

### Terrence Dean OAKS, Defendant-Appellant.

No. 75–2098.

United States Court of Appeals, Ninth Circuit.

Dec. 1, 1975.

Rehearing and Rehearing En Banc Denied Feb. 17, 1976.

---

Laurie Harris (argued), Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

* Honorable William J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

Lawrence Campbell, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before KOELSCH and CARTER, Circuit Judges, and JAMESON,* District Judge.

PER CURIAM:

Terrence Dean Oaks is a leading member of a tax rebellion group. On January 30, 1974 he was convicted in a jury trial of failing to file his 1971 income tax return (Form 1040) in violation of 26 U.S.C. § 7203 and of filing a false 1971 withholding certificate (W-4 Form) in violation of 26 U.S.C. § 7205. On appeal Oaks' conviction was remanded for an evidentiary hearing to determine whether he had been the subject of discriminatory prosecution.[1] *United States v. Oaks*, 508 F.2d 1403 (9 Cir. 1974). Following remand the district court held an evidentiary hearing and found that Oaks "was not the victim of impermissible discriminatory prosecution" and reaffirmed the judgment of conviction. On this appeal Oaks contends that the district court erred in this finding and also raises as an additional issue the propriety of undercover activities conducted by the I.R.S. agents.

The facts behind Oaks' conviction are uncontested. In January, 1971 he filed a Form 843 for refund of taxes withheld from his pay, claiming that the taxes had been collected in violation of the Constitution. In April, 1971 Oaks filed his Form 1040 omitting all of the information required by the return except for his name, address, and the statement, "*Under protest* I plead the Fifth Amendment to the U.S. Constitution." He attached a letter explaining that the return "might tend to incriminate" him and that he had been paid in Federal Reserve Notes "which are not lawful money and, therefore, cannot be con-

1. The court found that the other points raised by Oaks were without merit.

sidered as taxable income." When the I.R.S. informed Oaks that it could not process his refund claim without the information required on Form 1040, Oaks responded by letter dated May 10, 1971 reiterating his objections to the income tax laws and stating his intention to file an "exploded W-4 form . . . [meaning] that I intend to claim many more dependents than I am actually entitled to." On July 13, 1971 he filed a W-4 Form claiming a total of 15 exemptions.

### Selection of Appellant for Prosecution

In a memorandum of decision following the evidentiary hearing on remand, the district court made the following findings:

\* \* \* \* \* \*

"2. With respect to the tax years 1970 through 1973, one hundred sixty (160) investigations were made by the Los Angeles District I.R.S. Intelligence Division with respect to suspected violations of § 7203 (failure to file). Of these, forty-eight (48) (30%) involved people identified with the Tax Rebellion group. Such investigations resulted in a total of forty-eight (48) individuals being recommended by the I.R.S. for prosecution. Of that number, twenty-four (24) were presumably affiliated with the Tax Rebellion group, and the defendant was one of the twenty-four (24).

"3. One of the principal means by which the I.R.S. is made aware of a potential violation of § 7203 is for a person to call attention to himself by submitting the type of return filed by the defendant and his fellow participants in the Tax Rebellion group.

"4. In determining what potential violations of the tax laws that come to its attention shall be investigated with a view to possible prosecution, the I.R.S. seeks to take into account the following factors:

(a) The availability of an agent to investigate the matter, in light of the total caseload and the limited personnel resources.

(b) The flagrance of the suspected violation.

(c) The suitability of the case for prosecution as a deterrent to other individuals.

"5. If an investigation is made and results in a conclusion that the law has been violated, the I.R.S. recommends prosecution in each instance where it concludes that it has sufficient competent evidence to support a conviction and that there is a reasonable chance of obtaining such conviction.

"6. The prosecution of the defendant for violation of § 7203, as well as the similar prosecutions of the other forty-seven (47) individuals, stemmed from a consideration of the factors set forth in paragraphs 4 and 5 hereof, and the prosecution of the defendant was not the result of impermissible discrimination.

"7. A taxpayer may legally claim more than his actual number of dependents on his W-4 form, in order to reduce the withholding to approximate the tax that he anticipates will be due at the end of the year. Thus, whether the claim asserted on a W-4 form is legitimately made for such purpose or is fraudulent usually cannot be determined until after the final tax return is filed or is due. A substantial indication of fraud is present when a person claims a large number of nonexistent dependents and then files no tax return. Hence, the most usual way for the I.R.S. to be alerted to the possibility of a fraudulent W-4 claim (in violation of § 7205) is the awareness of a potential violation of § 7203 (failure to file). This is what happened here with respect to the defendant.

"8. For the years 1970 to 1973, there were twenty-four (24) investigations of suspected violations of § 7205, all of which involved members of the Tax Rebellion group. Of these, three (3) were recommended for prosecution, including the defendant.

"9. In selecting the three (3) individuals for investigation and for prosecution, the I.R.S. followed the policies set out in paragraphs 4 and 5 hereof. The awareness by the I.R.S. of the fact that the defendant publicly explained in detail how he had frustrated the tax withholding laws and urged others to follow his example may well have influenced the I.R.S. in selecting him as a person whose prosecution would have relatively great deterrent value. Such selective prosecution is deemed reasonable and appropriate."

■■■ To sustain a claim of selective or discriminatory prosecution, a defendant bears the burden of proving first that "others similarly situated generally have not been prosecuted" for similar conduct, and second that "his selection was based on an impermissible ground such as race, religion or his exercise of his first amendment right to free speech." *United States v. Scott,* 521 F.2d 1188 (9 Cir. 1975).[2] *See also United States v. Berrios,* 501 F.2d 1207, 1211 (2 Cir. 1974) and cases there cited. The facts developed at the evidentiary hearing, as set forth in the findings of the district court,[3] do not establish either of the elements necessary for a successful defense of discriminatory prosecution. We agree with the district court that the prosecution of appellant was not the result of impermissible discrimination.

## Claim of Improper Surveillance in Violation of First and Fifth Amendments

Appellant contends further that surveillance activities of the Internal Revenue Service violated his First and Fifth Amendment rights.

Documents produced by the Internal Revenue Service at the hearing on remand disclosed that undercover agents had infiltrated the Tax Rebellion Committee of which Oaks was a member, attended various public meetings of the Committee and similar public gatherings, and submitted reports on the activities of the committee and its members, including Oaks. The first report pertaining to Oaks was made on June 10, 1972 and the last report on June 18, 1975. Most of the reports related to public gatherings in which Oaks had participated.[4]

■ There is no evidence that any information obtained through the surveillance was used against Oaks at his trial. His trial and conviction were based upon records and his own written statements mailed to I.R.S. officials prior to any surveillance.[5] As in *Scott, supra,* his defense was an "open book", and he admitted all of the essential elements of the offenses charged. Appellant suffered no

---

2. *Scott* is factually similar to this case. Scott was convicted of failure to file income tax returns and styled himself a "natural tax resistance leader". In affirming the conviction this court concluded that the "case is clearly distinguishable from *United States v. Steele,* 461 F.2d 1148 (9 Cir. 1972), where the court was convinced that the government had actual knowledge of other violators but compiled background reports and prosecuted only those who had taken a public stand against compliance with the census law. Here, appellant has only demonstrated that the government had an announced policy of vigorous enforcement of the tax law against those who took a public stand against filing returns. There was no evidence presented that the government did not prosecute others who failed to file returns but who did not take a vocal stand on the issue.

It is not surprising that the government might prosecute those cases in which the violations of the tax laws appeared most flagrant."

The same is true here.

3. There is ample evidence to support the findings of the district court. We find no evidence that improper criteria were used by the Internal Revenue Service in its investigation and recommendation of prosecution.

4. The first report on June 10, 1972 related to a meeting of the Tax Rebellion Committee and listed the names of people in attendance. The other reports were subsequent to Oaks' indictment and many of them subsequent to the trial.

5. The district court accordingly did not consider this issue at the remand hearing.

prejudice from the surveillance activities.[6]

■ Nor do we find that the surveillance of the meetings of the Tax Rebellion Committee by the undercover agents was improper. The meetings were open to the public and the participants were openly advocating the willful violation of Internal Revenue laws. The risk of surveillance of meetings of this type must be assumed. No interest legitimately protected by the First and Fifth Amendments is involved. *Cf. Hoffa v. United States*, 385 U.S. 293, 300–303, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).[7]

Affirmed.

6. The very limited intrusion into the defense camp at the time of trial was far less than that in *Scott, supra,* where the court concluded that "appellant suffered no prejudice from the mere fact of the government's limited intrusion into

the defense camp of appellant and his friends."

7. While *Hoffa* involved an alleged violation of the Fourth Amendment, we find the reasoning of the Court equally applicable to the First and Fifth Amendments under the facts of this case.