**UNITED STATES of America, Appellee,**

v.

**Nancy E. WILSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Buddy Rex WILSON, Appellant.**

**Nos. 80–1255, 80–1256.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 10, 1980.

Decided Feb. 9, 1981.

---

Jo Ann D. Diamos, Tucson, Ariz., for Nancy Wilson.

S. Jeffrey Minker, Tucson, Ariz., for Rex Wilson.

Gerald S. Frank, John G. Hawkins, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before KILKENNY and GOODWIN, Circuit Judges, and REAL,* District Judge.

GOODWIN, Circuit Judge.

The Wilsons, who were charged with filing false withholding statements during 1979 in violation of 26 U.S.C. § 7205, moved to dismiss the indictment on grounds of selective prosecution. They argued that the government prosecuted them only because they had exercised their First Amendment right to protest the income tax or because they had exercised their Fifth Amendment right not to answer IRS' questions. The district court denied the motion and they appeal.

Two issues are presented. The first is whether this court has jurisdiction under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and its progeny, to hear this interlocutory appeal. If so, we must decide whether the Wilsons presented sufficient evidence of an illegal prosecution to warrant pretrial dismissal.

I. *JURISDICTION*

*Abney* held that a double jeopardy ruling is immediately appealable under the collateral order exception to the final judgment rule. In *United States v. Griffin*, 617 F.2d 1342 (9th Cir. 1980), this court extended the *Abney* exception to certain orders denying motions alleging "vindictive" prosecution. The question whether the *Griffin* exception should be applied equally to allegations of selective prosecution appears to be one of first impression.

---

* The Honorable Manuel L. Real, United States District Judge for the Central District of California, sitting by designation.

■ Little substantive difference can be detected between selective prosecution and vindictive prosecution. Vindictive prosecution arises only where the government increases the severity of alleged charges in response to a defendant's exercise of constitutional rights. *See United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980); *see generally, United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978) (vindictive prosecution claim brought after new charges were filed following defendant's motion to dismiss on speedy trial grounds); *United States v. De-Marco*, 550 F.2d 1224, 1226 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977) (vindictive prosecution claim brought when new indictment filed after defendant successfully moved for a change of venue).

■ Selective prosecution challenges arise when a defendant alleges that he is being prosecuted *initially* for having exercised a constitutional right. *See United States v. Oaks*, 527 F.2d 937, 940 (9th Cir. 1975), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976). The interests involved are the same as in vindictive prosecution cases: the defendant seeks protection from criminal prosecution initiated punitively, in response to the exercise of his constitutional rights.

■ To be heard, all interlocutory appeals must meet three criteria.

> "First, there ... [has] to be a complete and final determination of the issue in the district court. No appeal may be taken if the matter was left, 'open, unfinished or inconclusive.' ... Second, the decision .... [can] not be simply a 'step toward final disposition of the merits of the case [that would] be merged in the final judgment'; rather, it must resolve

an issue wholly collateral to the actual cause of action asserted.... Finally, the rights involved in the decision would be 'lost, probably irreparably,' if appellate review was postponed until final judgment...." *United States v. Griffin*, 617 F.2d at 1344.

■ A selective prosecution appeal does satisfy the *Griffin* criteria. The trial court's selective prosecution ruling is no less a complete and final determination than is a "vindictive" prosecution ruling. Second, the selective prosecution decision is not a step towards final disposition of the merits that would be merged into the final judgment. As in *Griffin*, selective prosecution does not constitute a challenge to the merits of the charges brought against the accused, nor could a disposition of the claim affect, or be affected by, a decision which is based on the merits. *Id.* at 1345. The issue of selective prosecution has nothing to do with whether the Wilsons did or did not file false withholding forms. Last, selective prosecution, as much as vindictive prosecution, possibly involves a right to be "free from prosecution itself, rather than merely the right to be free from a subsequent conviction." *Id.* Thus, because selective prosecution cases meet the *Griffin-Abney* criteria, they are immediately appealable.

We note that even the government did not attempt in its brief to distinguish selective prosecution claims from vindictive prosecution claims. Instead, it concentrated on explaining why *Griffin* type defenses should not be immediately appealable. We are sympathetic with the government's argument, but it must be addressed to the court *en banc*. This panel is bound by *Griffin*.[1]

---

1. Promiscuous resort to interlocutory appeals following *Griffin* has been counterproductive. It is frustrating the speedy trial policy, and the interlocutory appeals multiply the work of this court. Many of the claims of selective or vindictive prosecution are so patently frivolous that they can be disposed of summarily; but even summary disposition cranks into the life of a district court case several weeks of delay. Delay, disruption of calendars, loss of jury time, and needless expense follow in the wake

of these interlocutory appeals. Once the *Griffin* rule was established, defense attorneys, as advocates, properly added "vindictive prosecution" to their check list of possible strategy for delay, continuance, severance, or dismissal. The resulting outpouring of motions was predictable. This court processed 13 *Griffin* and 25 *Abney* appeals during the months of June, July, August and September of 1980. Few appeared to have any merit.

## II. SUFFICIENCY OF THE SHOWING BELOW

The district court denied the Wilsons' motion to dismiss, finding that they had failed to carry their burden of showing improper selective prosecution. The Wilsons asserted that they were selected for prosecution either because they refused to answer questions on their 1040 tax form and attached a 40-odd page memorandum on the unconstitutionality of the tax laws, or because they had exercised their Fifth Amendment rights when an IRS officer called on them. Their bare assertion does not make a case.

### A. Standard of Review

■ In *Griffin*, 617 F.2d at 1347, this court may have used an abuse of discretion standard to review the denial of a motion to dismiss on vindictive prosecution grounds. While *Griffin* and the instant case arise in the same procedural posture and involve substantially similar issues, we believe it is technically accurate to follow the "clearly erroneous" standard in reviewing the fact finding process here.[2]

### B. The Selective Prosecution Test

■ The district court used the following test to decide whether there was improper selective prosecution:

"The law in this Circuit places the burden squarely upon the defendants to prove in a selective prosecution:

1. That others are generally not prosecuted for the same conduct;

2. The decision to prosecute this defendant was based upon impermissible grounds such as race, religion or the exercise of constitutional rights."

All parties agree that this was the proper test.

The initial case setting the selective prosecution standard was *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). It did not mention prosecution based on exercise of constitutional rights, but prosecution based on "arbitrary classification." *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972), came next; it expanded the test to cover prosecution based on the defendant's exercise of his First Amendment rights. Then came *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974), a Second Circuit case; *Berrios'* formulation of the test included prosecution based on exercise of constitutional rights. *United States v. Scott*, 521 F.2d 1188, 1195 (9th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976), followed; it phrased the test in terms of exercise of First Amendment rights, but cited *Berrios* (constitutional rights) and *Steele* (First Amendment rights) as support. *United States v. Oaks, supra*, 527 F.2d at 940,

There is no denying the need for a remedy in the truly deserving case, but there is no evidence of injustice resulting by leaving the parties to mandamus or to post-conviction review. We have seen no evidence that any of the tax protest cases, in which most of the claims of vindictive prosecution have been asserted, were brought for an improper reason. The very nature of the self-assessment tax system of this country requires both a modest degree of citizen cooperation and prompt enforcement action against those who attempt by obstructive behavior to bring down the system. The present case is a case in point.

2. Several cases in this circuit have raised selective prosecution claims on appeal. *See United States v. Choate*, 619 F.2d 21 (9th Cir. 1980); *United States v. Gillings*, 568 F.2d 1307, 1309 (9th Cir. 1978); *United States v. Oaks*, 527 F.2d 937, 940 (9th Cir. 1975); *United States v. Scott*, 521 F.2d 1188, 1195 (9th Cir. 1975); *United States v. Steele*, 461 F.2d 1148, 1151-52 (9th

Cir. 1972). In each of them, the court appears to have decided, de novo, whether the charge of improper selective prosecution was sustained. We prefer the "clearly erroneous" standard for several reasons. First, even though the selective prosecution cases did not articulate the standard of review, we are not convinced that the court did not follow the fact-finding standard. Second, selective prosecution, even more than vindictive prosecution, lends itself to the fact finding standard. Vindictive prosecution only requires a substantial "appearance" of vindictiveness, but selective prosecution requires a finding that the decision to prosecute was based on impermissible grounds. *United States v. Oaks*, 527 F.2d 937, 940 (9th Cir. 1975). Because this is a factual question, involving the credibility of witnesses, we believe the better standard is the clearly erroneous standard well known to the bench and bar and involving no novelty.

which came next, was a tax protest case; the court used the First Amendment test, but the facts suggest that a Fifth Amendment right was also involved. *United States v. Gillings*, 568 F.2d 1307, 1309 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978), said that the test in this circuit is that used in *Berrios* (constitutional rights), but it cited *Oaks* (First Amendment test, Fifth Amendment facts) as support. In *United States v. Choate*, 619 F.2d 21, 23 (9th Cir. 1980), the court said that the Ninth Circuit had expanded the *Oyler* test to include exercise of First Amendment rights. We now expressly approve the selective prosecutive test as formulated by the district court and *Gillings* : prosecution based on exercise of *constitutional rights* is impermissible.

### C. *The Evidence*

The Wilsons first argue that if only two persons out of approximately 425 who filed "exempt" W-4's are prosecuted, the probable explanation has to be that they were "chosen" because of their tax protest, an exercise of a constitutional right. Perhaps the strongest testimony in the Wilsons' favor is that elicited by the trial judge. He asked the IRS investigator: "[D]o you know of any case in Tucson since you've been here that involves someone who filed a [W-4] form but didn't give any other information on their tax return and paid no taxes and was a tax protestor that has not been prosecuted?" Investigator Lujan answered, "No, I don't know of anyone."

Buddy Wilson's attorney asked Lujan: "Is the most recent case that you know of that you've prosecuted the one that you mentioned that's three years old in the Tucson area?" Lujan answered, "yes". The attorney then asked whether that individual had refused to give information on First and Fifth Amendment grounds and Lujan again answered "yes." Thus, there was some evidence suggesting that all "tax protestors" are prosecuted and that the IRS has not recently prosecuted any nonprotestors. ·

The Wilsons' argument also relies on the following evidence:

1. In 1979, 5140 people in Arizona filed "exempt" or excessive W-4's;

2. 1689 of these W-4's were checked; ¼ th of these (approximately 425 people) had not filed a 1040 form either;

3. At any given time in the district (unclear if in Phoenix only or all of Arizona) there are 75–100 investigations; 30–35 percent involve violations similar to this case (false withholding, failure-to-file a 1040);

4. There were two 1979 false withholding cases from Tucson pending; there were two 1980 false withholding cases from Tucson pending (including the Wilson case); there was one 1972 false withholding from Tucson pending; there were three 1979 and 1980 false withholding cases from Phoenix pending; there were three 1980 failure-to-file cases from Phoenix pending.

5. Investigator Lujan's survey of the Wilsons' place of employment revealed 25 others who had filed exempt W-4's. No investigation or prosecution on those is mentioned in the record.

The Wilsons have made some showing, then, that others whose W-4 forms might bear investigation have not been prosecuted. The Wilsons do not prevail, however, because they have not introduced evidence which convincingly shows that they were prosecuted because of their exercise of constitutional rights. They have not shown, as the *Oaks* test requires, that other similarly situated who have not exercised their rights have not been prosecuted. The statistics listed above show that there were other prosecutions and the Wilsons have not shown that those defendants were also tax protestors. This being so, we cannot find that the Wilsons carried their burden of proving that the decision to prosecute was made because they exercised their constitutional rights.

All prosecutions are to some degree "selective." The government concedes as

much. Tax cases, because of budgetary and other institutional limitations, are perhaps the most selective of all. United States attorneys, and before they get the file, enforcement officers in the field, constantly practice some degree of selectivity in deploying their limited enforcement resources. In the tax field, with millions of returns, and many thousand that reveal some basis for further investigation, it is not surprising that only a very small number can be prosecuted. It is also not surprising that the limited enforcement resources are deployed to develop the strongest cases for prosecution. It is also not surprising that tax protestors, who seek by various attention-getting devices to attract enforcement attention to their cases, succeed. They undoubtedly present the strongest cases where "willfully" is an element of the cause of action. It is to be expected that a disproportionate number of tax protestors will be prosecuted. Unless one can show that the tax laws are deployed against protestors in retaliation for the exercise of their rights, a selective prosecution argument will fail.[3]

The only Ninth Circuit case we have found where defendants prevailed on a claim of invidious selective prosecution was not a tax case. In *United States v. Steele*, 461 F.2d *supra*, at 1150–52, defendant and three others were prosecuted for refusing to answer questions on a census form. All four had been notoriously involved in a census resistance movement. Steele had difficulty getting statistics, but those he produced were sufficient to show that only the protestors had been prosecuted while six others (nonprotestors) had committed the same offense. Unlike Steele, the Wilsons did not show that others similarly situated who had not exercised their speech rights were not prosecuted. They did not show that the other pending cases also involved tax protestors.

The Wilsons also argue that IRS' deviation from routine procedure in their case indicates selective prosecution. This argument is nonsense. If there were a departure from IRS procedure, there would have to be proof that the departure was motivated by animus against the Wilsons because of the exercise of their constitutional rights. We cannot say that the findings of the district court were clearly erroneous.

The order appealed from is affirmed.

REAL, District Judge (concurring).

I concur in the result.

I do not agree that selective prosecution should be treated in the same manner as the double jeopardy claim made in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) or the vindictive prosecution claims made in *United States v. Griffin*, 617 F.2d 1342 (9th Cir. 1980). I do share with the majority their concern for the proliferation of interlocutory appeals caused by Griffin but do not approach the selective prosecution questions raised by this appeal from that standpoint. I differ with the majority because they run headlong into the semantic trap of putting vindictive and selective prosecution in the same basket when they come from totally different gardens.

No one should question the distinction between a claim of double jeopardy expressly prohibited by the 5th Amendment and a claim of selective prosecution. Double jeopardy—aside from its constitutional underpinnings—involves a defendant who is being put to the trauma and expense of a second prosecution for conduct already subjected to the scrutiny of a trier of fact and decided either for or against the defendant in the first prosecution. Selective prosecution involves a single prosecution. Clearly the distinction could lead courts to declare that the defendant now claiming his 5th Amendment double jeopardy rights need not be "forced to 'run the gauntlet' a second time before an appeal could be taken; ..." *Abney*, 431 U.S. at p. 662, 97 S.Ct. at p. 2041.

---

3. Title 26 U.S.C. § 7205 says:

"Any individual required to supply information to his employer under section 3402 who *willfully* supplies false or fraudulent information ... shall ... upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both." (Emphasis added)

The vindictive prosecution claim in Griffin brought this Court to apply the Abney rationale and raise vindictive prosecution claims to the same level of protection offered by the Constitution to 5th Amendment claims of double jeopardy. The wisdom or unwisdom of Griffin aside the Court there gave three reasons for the adherence to Abney rationale none of which is persuasive in a claim of selective prosecution. First, the Court said the denial of the motion to dismiss the vindictively brought prosecution is a complete and final determination of that claim in the trial court. Second, a vindictive prosecution claim is wholly collateral to the issue of guilt or innocence of the defendant on the first charge. The collateral nature of the claim is that a second prosecution is brought by the prosecutor in retaliation of the exercise of some legal right in the original prosecution. Third, vindictive prosecution claims involve a right to be free from the second prosecution itself. The claim in substance is that "I'm being prosecuted in this case because I made the prosecutor mad by exercising a legal or Constitutional right in another case."

Selective prosecution, on the other hand involves a single prosecution. The claim arises out of the exercise of prosecutorial discretion in picking this defendant to prosecute for this crime at this time. The search into the motivation of a prosecutor—vigor, sincere belief of the deterrent value or bad faith—requires a court to delve into empirical data not vaguely relevant to guilt or innocence in the very prosecution in which the claim is made.

Prosecutorial discretion is certainly not untrammeled. Neither should it be subjected to the scrutiny of a Court except for a clear showing of abuse of discretion. This is not the stuff from which interlocutory appeals are made. To subject claims of abuse of discretion to the interlocutory appeal rationale of Abney and Griffin would in effect bring into the chambers of trial and appellate judges the day to day decisions of a prosecutor as to why this defendant was chosen for prosecution while the prosecution of some other person—claimed by the defendant to be guilty of the same conduct—is delayed or not prosecuted at all. I, for one, eschew the invitation to be such a super prosecutor.

If selective prosecution has any reviewability—and I believe it does—it can only intelligently be reviewed after all the facts relevant to the conduct being prosecuted are disclosed at trial. Otherwise prosecutors will be required to mini-try their entire portfolio of investigations to justify why this defendant was chosen to be prosecuted while others claimed by the defendant to be equally or more culpable of the same kind of conduct are not prosecuted. Prosecutors will be required to reveal and rationalize the relative strength of their case against this defendant as compared to others being considered for presentation to a Grand Jury or otherwise rejected for prosecution.

The appealability of rulings on selective prosecution claims ought to march hand in hand with the holding in *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) where the Supreme Court considering a speedy trial claim declined to "exacerbate pretrial delay by intruding upon accepted principles of finality . . ." to allow an interlocutory appeal.

One last thought. What ultimately is the victory of a defendant claiming selective prosecution? None, for the remedy would be for the prosecutor to present to the Grand Jury all violations of the same criminal statute. Acceding to the majority's view of selective prosecution claims would bring the Court into direct supervision of the prosecutor's office. I cannot abide such a legal and logistic mistake.