979 F.2d 856
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yancy HAWKINS, Defendant-Appellant.
 No. 91-50009.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 2, 1992.
Decided Nov. 23, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Yancy Hawkins appeals his jury conviction and his sentence under the Federal Sentencing Guidelines for conspiracy to aid and abet the subscription and presentation of false amnesty applications to the INS in violation of 18 U.S.C. § 371 and for aiding and abetting the subscription and presentation of false amnesty applications to the INS in violation of 18 U.S.C. §§ 2 and 1546(a).
 
 
 3
 * Hawkins argues that the district court erred by allowing the government to conduct cross-examination concerning his potential misconduct involving Manuel Zialcita, Espedido Castillo, and Roberta Amick. Hawkins contends that the cross-examination was improper under Federal Rule of Evidence 608(b) because the government did not establish a factual predicate for the questioning outside the presence of the jury. He also contends that the focus of the cross-examination was irrelevant and highly prejudicial.
 
 
 4
 We disagree. The government had a good faith belief in the misconduct that was the subject of its cross-examination. The questions concerning Zialcita and Castillo involved fraudulent amnesty applications prepared by Hawkins. The factual predicate for these questions were the applications themselves, which had been introduced into evidence. Similarly, the questions concerning Amick involved Hawkins' role in the forged deed of trust used to secure his $150,000 bond. The factual predicate for these questions was the government's knowledge that Hawkins had earlier misled the court with respect to the deed of trust.
 
 
 5
 We also hold that it was unnecessary for the government to inform the district court of its good faith belief outside the presence of the jury. The district court judge knew that the amnesty applications had been introduced into evidence and that Hawkins had misled the district court about the deed of trust. Thus, he was satisfied that the government had a reasonable basis for its questions. To require the government to reiterate its good faith belief in a side-bar conference prior to cross-examination would have been unnecessarily formalistic.
 
 
 6
 In addition to being proper, the government's questions concerning Zialcita, Castillo, and Amick were also relevant. The questions were designed to impeach Hawkins' credibility. This court has held that a witness' participation in a fraudulent transaction is probative on the issue of truthfulness. See United States v. Jackson, 882 F.2d 1444, 1446 (9th Cir.1989).
 
 
 7
 Finally, we are not persuaded by Hawkins' claim that the questioning should have been prohibited because it was unfairly prejudicial. We believe that the probative value of the questioning outweighed any prejudice that Hawkins may have suffered. This is especially true given the district court's careful limiting instruction that Hawkins was only on trial for crimes charged in the indictment, and not for any other activities.
 
 II
 
 8
 Hawkins also challenges his conviction on the ground that he was unaware that falsifying amnesty applications was illegal. He argues that not only did the government fail to provide adequate notice that this practice was illegal, but that INS officials assured him that it was acceptable. As a result, the government's subsequent prosecution violated his Fifth Amendment rights.
 
 
 9
 Hawkins is correct that due process requires that the government must provide fair notice as to what constitutes illegal conduct so that individuals can conform their conduct to the requirements of the law. United States v. Dahlstrom, 713 F.2d 1423, 1427 (9th Cir.1983). However, this principle does not help him here. Section 1546(a), the statute that Hawkins violated, clearly establishes that falsifying amnesty applications is illegal. 18 U.S.C. § 1546(a). Thus, Hawkins had fair notice of the crime that he was charged with.
 
 
 10
 In addition, Hawkins' claim that INS officials told him that he could falsify amnesty applications is meritless. Hawkins alleged that he received this assurance from Anita Maker and Rosa DeLeon. However, at trial both denied ever telling Hawkins he could put false information on amnesty applications. In addition, Francis Duty specifically stated that he told Hawkins that all the information on the applications must be true. Finally, Hawkins' conduct, especially his instructions to the aliens that they had to memorize the information on their applications in order to deceive the INS, conclusively proves that he was never told that falsifying amnesty applications was acceptable.
 
 III
 
 11
 Hawkins argues that the evidence was insufficient to find him guilty of conspiracy to aid and abet the subscription and presentation of false amnesty applications to the INS. He contends that the alleged conspiracy in this case involved only himself and agent Concepcion. Because there can not be a true agreement to accomplish an illegal objective under these circumstances, Hawkins argues that no conspiracy existed.
 
 
 12
 Hawkins' argument is unpersuasive. His premise that the conspiracy consisted of only himself and Agent Concepcion is incorrect. Instead, the evidence reveals that Hawkins employed and conspired with several other people, including Liz Altamirano, Manuel Valdiviezo, and Jonathan Lubag. Under these circumstances, we are unable to say that a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt.
 
 IV
 
 13
 Hawkins argues that his conduct did not constitute a violation of 18 U.S.C. §§ 2 and 1546(a). He contends that because Aguja and Lubag did not commit the underlying crime which he aided and abetted, he cannot be convicted of violating 18 U.S.C. §§ 2 and 1546(a).
 
 
 14
 We disagree. The Ninth Circuit has held that in a prosecution for aiding and abetting, " 'the government need not prove that someone other than the defendant was guilty of the substantive crime. A person who causes the commission of an offense is punishable as a principal even though the person who completes the wrongful act violates no criminal statute because of lack of intent or capacity....' " United States v. Laurins, 857 F.2d 529, 535 (9th Cir.1986) (citing United States v. Causey, 835 F.2d 1289, 1292 (9th Cir.1987)). Thus, Hawkins misperceives the law. Moreover, his factual premise that Aguja and Lubag are not guilty is also incorrect. At trial, both men fully admitted their crimes by conceding that they knew the information on their applications was false.
 
 V
 
 15
 Hawkins challenges the jury instructions given by the district court. He argues that the instruction concerning the element of intent required the jury to find that Hawkins possessed the requisite intent if it concluded that he performed certain voluntary acts. In addition, Hawkins contends that he did not receive his proposed good faith defense instruction.
 
 
 16
 Contrary to Hawkins' argument, the intent instruction did not create a mandatory presumption. Instead, it simply permitted the jury to infer the requisite intent from the surrounding circumstances, including the acts that Hawkins knowingly performed. This instruction has been approved by the Ninth Circuit in the past, and there is nothing wrong with it under these circumstances. See United States v. Johnson, 735 F.2d 373, 374 (9th Cir.1984).
 
 
 17
 Turning to Hawkins' proposed jury instruction, the record reveals that Hawkins did, in fact, receive a good faith instruction. We find that it adequately informed the jury of this possible defense.
 
 VI
 
 18
 Hawkins argues that his Fifth Amendment rights were violated because the government intimidated two defense witnesses and convinced them not to testify. He contends that the facts of this case are similar to the situation in United States v. Heller, 830 F.2d 150 (11th Cir.1987). However, in Heller, the court found a due process violation based on an INS agent's admission that he attempted to intimidate a defense witness. Id. at 152-54. There was no such admission in this case. In fact, Hawkins offers no evidence to support his claim. Consequently, we find that his Fifth Amendment rights were not violated due to alleged government misconduct.
 
 VII
 
 19
 Hawkins argues that the district court erred in denying his motion to dismiss the indictment for selective prosecution. We disagree. Hawkins failed to establish that others similarly situated have not been prosecuted for immigration fraud. Indeed, the government presented evidence that at least five persons beside Hawkins were convicted in 1990 of aiding and abetting the subscription and presentation of false amnesty applications. In addition, Hawkins offered no evidence to support his allegations that he was prosecuted for impermissible reasons. As a result, we conclude that the district court's denial of Hawkins' motion to dismiss for selective prosecution was not clearly erroneous.
 
 
 20
 We also uphold the district court's decision precluding Hawkins from presenting evidence of his selective prosecution claim at trial. This issue had nothing to do with whether Hawkins committed the crimes charged. See United States v. Wilson, 639 F.2d 500, 502 (9th Cir.1981). In addition to being irrelevant to the question of guilt, evidence of selective prosecution could have needlessly confused the jury. Thus, the district court did not abuse its discretion in excluding this evidence.
 
 VIII
 
 21
 Hawkins argues that the district court erred in failing to hold a Franks hearing on the validity of the search warrant affidavit. In order to be entitled to a Franks hearing, Hawkins must make a substantial showing that a false statement was knowingly or recklessly included in the search warrant affidavit and that the false statement was necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978).
 
 
 22
 Hawkins may be correct that the affidavit incorrectly states that Neil Henry received an incriminating tip from INS examiners. However, Hawkins made no showing that this statement was knowingly or recklessly included in the affidavit. He also failed to establish that this statement was necessary to the finding of probable cause. As a result, we conclude that the district court did not err in refusing to hold a Franks hearing.
 
 
 23
 Hawkins also contends that there was not probable cause to issue the search warrant. He claims that the supporting affidavit was filled with lies and omissions. However, he only discusses one alleged error: the information attributed to Neil Henry. We do not reach the issue of whether the statement in the affidavit concerning Neil Henry was accurate because we find that the remainder of the affidavit was sufficient to support a finding of probable cause.
 
 IX
 
 24
 In his final challenge to his conviction, Hawkins argues that the cumulative effect of the errors committed by the district court requires reversal. Because no substantial errors were committed by the district court, this argument fails.
 
 X
 
 25
 Hawkins disputes several aspects of his sentence. First, he argues that the district court erred in departing upward under the Federal Sentencing Guidelines. We disagree. The record reflects that the district court based its decision to depart upward on the scope of the illegal enterprise organized by Hawkins, the disruption of governmental functions that Hawkins caused, and the fact that Hawkins' criminal history category did not represent the seriousness of his criminal history. These are all aggravating factors not adequately taken into consideration by the Guidelines which justify an upward departure. Indeed, a misleading criminal history category is specifically listed as an aggravating factor in § 4A1.3 of the Guidelines.
 
 
 26
 There was also ample support for the aggravating factors relied on by the district court. The large scope of the enterprise, both in terms of profit generated and applications involved, was well established at trial. Similarly, it can not be disputed that in forcing the INS to process perhaps hundreds of fraudulent applications, Hawkins caused significant disruption. In addition, Hawkins' criminal history category clearly did not reflect his criminal history. Hawkins had a criminal history point total of 21, eight points more than the 13 needed to qualify for the highest criminal history category.[1]
 
 
 27
 Finally, we do not think that the district court abused its discretion in imposing a 70 month sentence. The presentence report provides a detailed and adequate explanation for the departure upward to 70 months. Because the district court specifically adopted the presentence report at the sentencing hearing, the extent of the upward departure was reasonable.
 
 
 28
 In addition to challenging the decision to depart upward under the Guidelines, Hawkins also argues that the presentence report sent to the Bureau of Prisons contains factual inaccuracies. This is ministerial error which does not require resentencing. See United States v. Fernandez-Angulo, 897 F.2d 1514 (9th Cir.1990). The government has volunteered to provide the Bureau of Prisons with the corrected version of the presentence report, and we order the government follow through on its promise.
 
 
 29
 Finally, Hawkins challenges the $250,000 fine imposed by the district court. He argues that the fine was in retaliation for his zealous advocacy and that the district court failed to consider his ability to pay. Neither claim is persuasive. First, there is no evidence that the district court imposed the fine to punish Hawkins for his zealous advocacy. Instead, it levied the fine to reflect the large pecuniary gain Hawkins received as a result of his illegal operation.
 
 
 30
 Second, the record reflects that the district court did take into consideration Hawkins' ability to pay the fine. The district judge commented that the fine was adequate and that he felt that Hawkins could pay the $250,000, although not more than that. In response, Hawkins argued that he had no assets. However, he made no effort to explain what assets were held by his wife and by his corporation, and he did not account for the large amount of money he earned in the months preceding his arrest. Under these circumstances we find that Hawkins failed to prove that he was unable to pay the $250,000, and that the district court did not err in imposing the fine.
 
 
 31
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Supplemental Addendum to the Presentence Report states that Hawkins may have had as many as 27 criminal history points