STATE OF VERMONT
ENVIRONMENTAL COURT

Secretary, Vermont Agency of Natural Resources,   }
    Plaintiff,   }
     }
    v.   }   Docket No. 41-2-02 Vtec
     }   (Stage II Vapor Recovery)
Mountain Valley Marketing, Inc.,   }
    Respondent.   }

Secretary, Vermont Agency of Natural Resources,   }
    Plaintiff,   }
     }
    v.   }   Docket No. 278-12-02 Vtec
     }   (Stage II Vapor Recovery)
Premium Petroleum, Inc.,   }
    Respondent.   }

Secretary, Vermont Agency of Natural Resources,   }
    Plaintiff,   }
     }
    v.   }   Docket No. 176-8-02 Vtec
     }   (Stage I and II Vapor Recovery)
Premium Petroleum, Inc., Odessa Corp.,   }
 Timberlake Associates, and Wesco, Inc.,   }
    Respondents.   }

Secretary, Vermont Agency of Natural Resources,   }
    Plaintiff,   }
     }
    v.   }   Docket No. 175-8-02 Vtec
     }   (Hazardous Waste
Premium Petroleum, Inc., Odessa Corp.,   }   Management Regulations)
 Timberlake Associates, and Wesco, Inc.,   }
    Respondents.   }

<u>Decision and Order on Pending Motions</u>

In each of the above-captioned cases, the Secretary of the Vermont Agency of

Natural Resources ("ANR" or "the Agency") issued an administrative order pursuant to 10 V.S.A. §8008 against the respective respondents. In all of the above-captioned cases, Respondents (which are all related corporations or entities) timely requested a hearing in Environmental Court. Respondents are represented by Jon Anderson, Esq., William E. Simendinger, Esq. and David W. Rugh,[1] Esq.; the Agency of Natural Resources is represented by Salvatore Spinosa, Esq., Gary S. Kessler, Esq., and Mark J. Di Stefano, Esq.

Docket No. 41-2-02 Vtec involves an administrative order issued on January 24, 2002, regarding Respondent Mountain Valley Marketing, Inc., alleging violations of the Air Pollution Control Regulations regarding Stage II Vapor Recovery six-and-a-half months in duration at its Champlain Farms Exxon (Waitsfield) gasoline station, and imposing a monetary penalty of $27,500.

Docket No. 278-12-02 Vtec involves an administrative order issued on November 26, 2002, regarding Respondent Premium Petroleum, Inc., alleging violations of the Air Pollution Control Regulations regarding Stage II Vapor Recovery eighteen months in duration at its Ji Jo Exxon (Colchester) gasoline station, and imposing a monetary penalty of $63,500.

Docket No. 176-8-02 Vtec involves an administrative order issued on July 31, 2002, regarding Respondents Premium Petroleum, Inc., Odessa Corp., Timberlake Associates, and Wesco, Inc., alleging violations of the Air Pollution Control Regulations regarding Stage II Vapor Recovery at three different gasoline stations (and regarding Stage I Vapor Recovery at one of those stations), and imposing a monetary penalty of $6,500.

Docket No. 175-8-02 Vtec involves an administrative order issued on July 31, 2002, regarding Respondents Premium Petroleum, Inc., Odessa Corp., Timberlake Associates, and Wesco, Inc., alleging 25 violations of thirteen sections of the Hazardous Waste

---

[1] The file does not reflect an entry of appearance for Attorney Rugh, although he has filed some documents; please provide an entry of appearance if appropriate.

Management Regulations regarding exempt and small-quantity generators of hazardous waste, at nine different gasoline stations, and imposing a monetary penalty of $59,900.

The total amount of monetary penalties imposed in the four administrative enforcement orders that are the subject of the above-captioned cases is $157,400. The cases involve approximately thirty-three alleged violations at fourteen different gasoline stations, if each alleged violation at each different station is considered as a separate alleged violation.

## Respondents' Motion to Exclude Testimony as Untimely

Respondents have moved to exclude the Agency's expert witness, Lawrence Lackey, from testifying, based on "ANR's late disclosure and the corresponding lack of an opportunity to examine ANR's expert." This motion was filed in January, when the trial was contemplated to begin shortly thereafter. However, based on the unavailability of an ANR witness and the appointment of Attorney Anderson to the Vermont legislature, the trial schedule was postponed and the merits hearing has been rescheduled to take place on November 27, 2007 through November 30, 2007, and on December 21, 2007, to accommodate the parties' and witnesses' schedules. Because the trial date has been set so far in the future, Respondents now have sufficient time for full discovery of this witness in advance of trial. Respondents' Motion to Exclude the testimony of Mr. Lackey is therefore DENIED as MOOT.

## Procedural History of Discovery Issues

The Court issued decisions and orders on July 7, 2003, August 11, 2003, October 12, 2004, and September 13, 2006, governing the elements of a selective enforcement argument in a civil case, and the sequence of discovery that would be allowed towards Respondents' efforts to make such an argument. The history and rationale of the Court's decisions is fully stated in the September 13, 2006 decision and order.

<u>Respondents' Motion to Compel</u>

Respondents moved to compel discovery of documents and internal memoranda prepared by the Agency in connection with the above-captioned enforcement matters, now arguing that these materials are necessary to enable Respondents to discover "pre-enforcement bias" of Agency personnel with which to impeach Agency witnesses during cross-examination at trial.

Respondents seek discovery of seven items initially requested in 2002 and 2003:

1. The ANR's entire file on Respondents' Waitsfield Exxon station.

2. All forms received by the ANR in 2001 showing the dates of installation and testing of Stage II vapor recovery equipment.

3. Information on each facility that is not on an extension list that the ANR commenced litigation against for failing to install vapor recovery equipment.

4. All the enforcement documents and NOAVs related to the White River Junction Texaco, Midway Mobil Mart, Evansville, and Bournes (1895) matters and the AODs in the Derby Line Mainway, Bournes (360) and Speedwell (two cases) matters.

5. Information on all "lawsuits[2]" filed by the Enforcement Division in the last twenty years, including any litigation amendments or additional counts that were added after the ANR commenced a case, all lawsuits in which multiple cases were filed against the same company or entities, and all investigators' notes, investigations, files, complaints and referrals to or by the Enforcement Division or the ANR.

6. Information on the location and quality of drums maintained by the

---

[2] As the Environmental Court and the ANR's issuance of administrative orders under the Uniform Environmental Enforcement Act commenced in 1990, this request evidently covered litigation commenced prior to that date, presumably in other courts under other statutory authority.

State's petroleum cleanup fund and all information related to the storage of drums since November 2, 1990 (the date the Environmental Court began its work).

7. An electronic copy of ANR's "enforcement database."

8. As requested a week after the Court's July 2003 order regarding discovery, ANR's lists of all enforcement proceedings, assurances and settlements since November 2, 1990, including sortable databases, and ANR's lists of amendments or supplemental charges brought against any company or entity, including sortable databases.

The Agency argues that some of this material has been provided, and that all of it was governed by this Court's prior orders relating to discovery.

At the outset, the Court notes that Respondents' 2002 and 2003 requests for discovery related to their claim of selective enforcement at the time they were initially made. In its July 2003 decision and order, the Court allowed extensive discovery on the first prong of the two-prong test for selective enforcement.[3] After that discovery had occurred, the Court thoroughly examined and denied Respondents' motions for further discovery in the September 13, 2006 decision and order in this matter, concluding that Respondents had failed to show that there were other entities that were similarly situated yet were treated differently. See, e.g., U.S. v. Ness, 652 F.2d. 890, 892 (9th Cir. 1981) (stating that (in a criminal case) "[t]he fact that access to the Government's files might be helpful to a defendant seeking to prove discriminatory prosecution does not relieve him of the burden of making an initial showing [of disparate treatment]").

It is also worth noting that most of the selective prosecution jurisprudence arises in the context of criminal prosecutions rather than, as here, in a civil case. Even if the Agency

---

[3] The first prong is that "the person, compared with others similarly situated, was selectively treated." In re Appeal of Letourneau, 168 Vt. 539, 549 (1998, as corrected 1999) (internal quotation and citations omitted).

5

initiated this administrative civil enforcement against Respondents while ignoring other violators, that fact would not necessarily support a claim of selective enforcement in a civil case. See LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980) ("equal protection does not require that all evils of the same genus be eradicated or none at all . . . [m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection.") (internal citations omitted). Also, as noted in U.S. v. Wilson, 639 F.2d 500, 504 (9th Cir. 1985), a criminal case, "[a]ll prosecutions are to some degree 'selective.'" The Wilson court went on to note that it is "not surprising that the limited enforcement resources are deployed to develop the strongest cases." Id. at 505.

In any event, as Respondents did not make out a showing on the first prong of selective enforcement after being granted the discovery necessary for them to do so, further discovery in support of their selective enforcement argument will not now be ordered.[4]

Nonetheless, information necessary to conduct effective cross-examination of witnesses is necessary for the "full and fair determination of the proceeding" called for by the rules, V.R.E.C.P. 1, and the statute, 4 V.S.A. §1004, applicable to this proceeding. Respondents are entitled to information to enable them effectively to cross-examine the ANR witnesses who are expected to testify in this proceeding, including to test the issue of bias. However, Respondents' request for "all investigators' notes, investigations, files, complaints and referrals to or by the Enforcement Division or the ANR" is excessively broad for this purpose, at least because it was not in any way limited to documents to or from the ANR witnesses in this case, or limited to material mentioning Respondents. Moreover, Respondents were granted certain similar discovery for impeachment purposes

---

[4] See ANR v. Lyndonville Sav. Bank & Trust Co., 174 Vt. 498, 502 (2002) (where respondent "hoped to uncover evidence to support its theory that the Agency's dogged prosecution of the administrative order was an attempt to punish [logger] for his outspoken objections to the new law[,] . . . the environmental court acted well within its discretion in refusing to grant . . . additional discovery and an evidentiary hearing to engage in a fishing expedition.").

in the related criminal case, <u>State of Vermont v. Wesco, Inc. and Odessa Corp.</u>, Docket No. 3105-6-01 Cncr (Chittenden Dist. Ct., Feb. 20, 2007), which may have made some of the discovery requests in the present case moot or otherwise unnecessary.

Accordingly, Respondents' present Motion to Compel is DENIED.  Respondents may make a more tailored discovery request to the Agency, if it is still necessary, identifying any specific discovery sought for impeachment purposes of specific witnesses, if that information has not already been provided in the context of the criminal case. Thereafter, if necessary, Respondents may file a new motion to compel, specifically addressing any contested discovery.

<u>ANR's Revised and Renewed Motions to Compel</u>

In two motions filed in early January, the Vermont Agency of Natural Resources also had moved to compel Respondents to provide supporting documents not already provided in Respondents' earlier responses to discovery requests.  At a conference and motion hearing, the Court directed Respondents to report by February 1, 2007, as to their efforts to locate the documents still sought by the ANR in those motions.  By a brief letter filed on January 31, 2007, Attorney Simendinger stated that the "sought after documents" had been located.  From the lack of further filings by either Respondents or the ANR in connection with the documents sought in these motions, the Court has concluded that these two motions were made moot by the production of the located documents.  If any issues remain as to any specific discovery sought by the ANR, the parties should so notify the Court.

Done at Berlin, Vermont, this 9th day of July, 2007.

_____
Merideth Wright
Environmental Judge