STATE OF NORTH CAROLINA v. DAVID H. ROGERS

No. 8310SC825

(Filed 15 May 1984)

1. **Constitutional Law § 28— unconstitutional selective prosecution—necessity for intentional discrimination**

    Selectivity in prosecution does not constitute a denial of equal protection unless there is shown to be present in the decision to prosecute an element of intentional or purposeful discrimination. Further, such discriminatory purpose is not presumed; rather, the good faith of the officers is presumed and the burden is upon the complainant to show the intentional or purposeful discriminations upon which he relies.

2. **Constitutional Law § 28— unconstitutional selective prosecution—manner of obtaining indictment irrelevant**

    Allegations relating to the manner in which the indictment against defendant was obtained rather than to the decision to seek an indictment for the conduct at issue are not germane to the issue of unconstitutional selective prosecution.

3. **Constitutional Law § 28— unconstitutional selective prosecution—failure to prosecute alleged aiders and abettors**

    Defendant attorney was not subjected to unconstitutional selective prosecution for standing bond for a person not a member of his family because a magistrate and a police officer who failed to prevent him from signing the bond were not prosecuted as aiders and abettors in the offense.

4. **Constitutional Law § 28— unconstitutional selective prosecution—failure of proof**

    Defendant attorney failed to show that he was subjected to unconstitutional selective prosecution for standing bond for a person not a member of his family in that he failed to show that he was singled out for prosecution or that his selection for prosecution was invidious where the trial court found that only one other attorney in the county had actually become a surety on a bail bond during the relevant time period and that the actions of such attorney were not known to the District Attorney's Office; defendant's contention that he was prosecuted because of prosecutorial hostility engendered by his representation of clients in cases against law officers and officials and because of particular acrimonious dealings he had had with the District Attorney's Office reflected mainly defendant's own subjective beliefs and was not supported by the facts of record; any possible bad faith on the part of the District Attorney's Office was insulated when the case was referred to and the ultimate decision to prosecute was made by an independent special prosecutor in the Special Prosecutions Division of the Attorney General's Office; and the trial court found that the Special Prosecutor did not act in bad faith or for an impermissible motive.

State v. Rogers

**5. Constitutional Law § 28— failure to show prosecutorial vindictiveness**

Defendant attorney was not subjected to impermissible prosecutorial vindictiveness because the prosecutor obtained a superseding indictment containing two counts relating to intimidating and interfering with witnesses after one count in the original indictment relating thereto had been dismissed for duplicity upon motion by defendant since (1) defendant was not subjected to additional charges and increased punishment under the superseding indictment because the trial court ruled that the two counts would be considered only as one offense and the superseding indictment contained no new or additional charge of a criminal offense which was not originally alleged, and (2) even if defendant was subjected to additional charges and increased punishment under the superseding indictment, he was not entitled to a presumption of prosecutorial vindictiveness and failed to show actual vindictiveness by the prosecutor.

**6. Arrest and Bail § 11— attorney as surety on bail bond—ignorance of law no defense**

Ignorance of the law is not a valid defense to a charge against an attorney for becoming a surety on a bail bond for a person who is not a member of his immediate family in violation of G.S. 15A-541.

**7. Arrest and Bail § 11— attorney as surety on bail bond—intent**

The mental state required under G.S. 15A-541 is nothing more than the general intent to do the proscribed act, that is, for the attorney to intend or knowingly to become surety on a bail bond for any person other than a member of the attorney's immediate family.

**8. Arrest and Bail § 11— attorney as improper surety on bail bond—sufficiency of evidence**

The State's evidence was sufficient to support conviction of defendant attorney for becoming a surety on a bail bond for a criminal defendant who was not a member of his immediate family in violation of G.S. 15A-541 where it tended to show that, after being informed by a magistrate that a statute prohibited attorneys from signing bail bonds for defendants, defendant nevertheless signed a bail bond for a criminal defendant to whom he was not related.

**9. Obstructing Justice § 1— interfering with State's witness—sufficiency of evidence**

The State's evidence was sufficient to support conviction of defendant attorney for attempting to interfere with a State's witness in violation of G.S. 14-226 where it tended to show that defendant represented a client charged with driving under the influence and hit and run; defendant told the prosecutor that the case would have to be dismissed if the prosecuting witness did not arrive in court; when the prosecuting witness did arrive in court, defendant muttered an obscenity and summoned his client, the prosecuting witness and the arresting officer to a conference room; there defendant and his client reached an agreement with the prosecuting witness that the client would pay for all the damages incurred on the night of the accident if the witness would agree not to press charges; defendant then told the prosecuting witness that

he could leave the courthouse; and the prosecuting witness had second thoughts about his agreement and returned to the courtroom.

10. **Attorneys at Law § 12; Criminal Law § 142.3— crimes by attorney — revocation of license as condition of probation**

The revocation of defendant attorney's license to practice law for eighteen months, with the provision that the period of revocation could be reduced to as little as six months if defendant satisfied the State Bar that he has the moral qualifications and competency and learning in the law demanded of attorneys and that his physical and mental condition is such that it does not interfere with his handling of cases and advising clients, was reasonably related to defendant's rehabilitation and was a proper condition of defendant's probation for the crimes of improperly posting bail bond for a person who was not a member of his immediate family and for attempting to interfere with a State's witness. G.S. 15A-1343(b)(17).

APPEAL by defendant from *Brannon, Judge*. Judgment entered 7 March 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 13 February 1984.

Defendant, David H. Rogers, is an attorney licensed to practice law in North Carolina. Defendant was tried pursuant to a four-count indictment brought as a superseding indictment. Originally, defendant was indicted by the Wake County grand jury on 25 October 1982 in a three count indictment based upon the same incident and occurrences as the superseding indictment. The three original counts charged the defendant, in substance, as follows: Count I, standing bail bond for a person not a member of the defendant's immediate family, in violation of G.S. 15A-541; Count II, improper solicitation of legal business by an attorney, in violation of G.S. 84-38; and Count III, attempting to, and intimidating and interfering with a State's witness who was under subpoena to testify in a named case, in violation of G.S. 14-226.

On 14 February 1983, defendant successfully moved to quash and dismiss the third count of the original indictment for failure to state an offense under the provisions of G.S. 15A-924. The third count of the original indictment was then dismissed by the presiding judge. Thereafter, the State, through its Special Prosecutor, Associate Attorney General Charles H. Hobgood, returned to the grand jury and obtained a superseding indictment on 15 February 1983. In the superseding indictment, Count I remained the same, Count II was reworded, but still charged soliciting legal business, and Count III was broken down into two counts. New

Count III charged intimidating and attempting to intimidate a State's witness who was under subpoena to testify in a named case, in violation of G.S. 14-226. New Count IV charged interfering and attempting to interfere with a State's witness and prevent him from testifying by offering to have his damages paid, in violation of G.S. 14-226. The State then dismissed the original indictment.

Following four days of pretrial motion hearings, defendant went to trial on the four-count superseding indictment before the Wake County Superior Court and jury. The court ruled, *inter alia*, that Counts III and IV would be considered together as a single count and instructed the jury accordingly. Defendant was convicted for Count I, standing bond for a person not a member of his immediate family, and for Count IV, attempting to interfere with a State's witness.

Judgment was entered on those verdicts, and the defendant was sentenced to a term of imprisonment of six months on Count I and of two years on Count IV. These sentences were to run concurrently and were suspended for five years, with defendant placed on unsupervised probation for five years. Among the terms and conditions of probation was the requirement that defendant surrender his law license to the North Carolina State Bar and cease the practice of law for a period not to exceed 18 months, to be shortened to as little as six months if he satisfies the State Bar with regard, *inter alia*, to his moral qualifications, competency and legal knowledge. In addition, the court entered a civil order imposing the identical discipline upon defendant under the court's summary jurisdiction to discipline attorneys. Defendant appeals from both the criminal judgment and sentence and the civil order.

*Attorney General Edmisten, by Associate Attorney General Charles H. Hobgood, for the State.*

*Wayne Eads, for defendant appellant.*

JOHNSON, Judge.

Defendant presents 15 questions for review broadly concerning the issues of (1) whether the indictment should have been quashed and the charges dismissed on the grounds that the prose-

cution against him was based on unconstitutional selective prosecution; (2) whether the superseding indictment should have been quashed and the charges dismissed on the ground of unconstitutional vindictive prosecution; (3) the sufficiency of the evidence to withstand defendant's motion to dismiss; and (4) whether the court abused its discretion in imposing a probationary judgment temporarily suspending defendant's license to practice law for his criminal offenses and also in entering a civil order imposing the identical discipline under the court's inherent authority to discipline attorneys.

The defendant was initially indicted for violating several criminal statutes prohibiting attorneys for engaging in certain conduct and for obstructing justice by intimidating or interfering with a State's witness. All of the alleged violations arose out of defendant's initial connection with and representation of Paula Ann Gately, who was charged with driving under the influence and with hit and run. We will address defendant's arguments in order of convenience and begin with the factual background leading up to the decision to prosecute defendant.

I

The evidence at defendant's trial tended to show the following: On 7 July 1982, between 2:00 and 2:30 a.m., the defendant, a licensed attorney, was in the Wake County Magistrate's Office. The magistrate on duty that night was Jerry Ray. Magistrate Ray testified that he had seen Attorney Rogers at the back of the courthouse late at night on other occasions.

Earlier that same night, Paula Ann Gately had gone to Darryl's Restaurant on Glenwood Avenue in Raleigh. There she drank a number of alcoholic beverages and, according to the arresting officer, became "very intoxicated." Ms. Gately remembered leaving Darryl's and pulling out onto Glenwood Avenue, but little that occurred thereafter.

At the same time that Gately pulled out onto Glenwood Avenue, a man named Bobby McMillan was driving on Glenwood Avenue, near Darryl's. Gately drove through a flashing red light, pulled out in front of McMillan and the two cars collided. Gately drove away with McMillan driving after her. Eventually, he caught up to talk to her, but she drove off again. McMillan

reported the accident to the Raleigh Police Department and Officer Mizelle arrived to investigate. Eventually, Officer Mizelle located Gately's parked car, found Gately herself, placed her under arrest and took her to the Magistrate's Office.

Magistrate Ray charged Gately with driving under the influence and with hit and run and placed her under a $100 secured bond. Rogers, who had been listening, then discussed something with Gately outside the office, and returned to notify Magistrate Ray that he was going to post Gately's bond. Magistrate Ray informed him that "the statute, [G.S.] 85C-22[1] states that attorneys are not allowed to sign bail bonds for defendants." Rogers said that he had to go and get the hundred dollars and, after a second warning from Magistrate Ray, said that he was "loaning" Gately the money. When Rogers returned, Magistrate Ray again informed him of the statute. In the meantime, the magistrate had taken out the General Statute book so that Rogers could read it if he wanted to. Without doing so, Rogers told Magistrate Ray that he was "aware" of the statute and again informed Ray that he was going to post the bond, that he was not representing Gately in court and was just loaning her the money. Rogers then paid the $100 and signed the bond as surety. He was not related to Gately.

Rogers and Gately left the office together and he drove her home. In his car, Rogers gave Gately his business card and she gave him her court papers; each considered Rogers to be her attorney. The next day, Gately telephoned McMillan. She offered to pay him $150 for his damages. McMillan informed Gately that her leaving the accident had been dangerous because he'd been carrying a gun that night. McMillan had left it in the holster and did not point it at her. According to McMillan, Gately did not remember the events of that evening. Gately then sent McMillan a check, but stopped payment upon Rogers' advice.

Prior to the trial of Gately's cases, Rogers requested that he be taken off Gately's bond, telling the Clerk's Administrative

---

1. G.S. 85C-22 states, in pertinent part, that, "No . . . attorney . . . may in any case become surety on a bail bond for any person . . . Provided, however, nothing herein shall prohibit any person above designated from being surety upon the bond of his or her spouse, parent, brother, sister, child or descendant." G.S. 15A-541(a) contains a substantially identical prohibition and subsection (b) provides that violation of that section is a misdemeanor.

Assistant that he had done it as "a friend" and was not going to represent Gately. On 19 August 1982, Gately's cases were scheduled for trial in Wake County District Court. Gately testified that she went to court with Rogers because he was her attorney. McMillan had been subpoenaed as a witness for the State, but was late in arriving. Officer Mizelle was present and told Rogers that he hadn't seen McMillan. Rogers said ". . . if he doesn't show up, we'll have the case dismissed . . ."

When Assistant District Attorney Mary Dombalis called Gately's cases, Rogers stood up and said he represented Gately and that the plea was not guilty. The Assistant District Attorney testified that a few minutes later Rogers said to her that her witness "was not there and if the witness did not show up I'd have to dismiss the case." Eventually, McMillan arrived and when he answered to the call of his name, Rogers muttered "shit" and motioned for Gately to meet him in the attorneys' conference room.

Rogers also asked Officer Mizelle to come into the conference room. Present at this meeting were Rogers, McMillan, Gately and Officer Mizelle, but not the Assistant District Attorney. Rogers discussed the accident with McMillan. He told McMillan that Gately was "willing to take care of" his damages and then asked McMillan whether he'd been carrying a gun that night. When McMillan told him, "yeah," Rogers said something to the effect that "we could bring charges on you for having that gun." Further, that McMillan was the only one actually to see Gately driving drunk and that he would have a good chance of getting Gately's cases thrown out if McMillan was not a witness. McMillan testified that he "got the understanding" that if he did not press charges and did not appear as a witness his damages would be paid. Also, that if McMillan brought Rogers his bill, Rogers and Gately would not bring any charges against McMillan about the gun. Rogers indicated that it was his opinion that the case would probably be dropped, and that McMillan would not be needed. They shook hands and Rogers told McMillan, "you can hit the door."

On the way out, McMillan had second thoughts and informed the witness coordinator that Rogers had told him to leave. McMillan was told to return to the courtroom. Thereafter, the

Assistant District Attorney was informed of the conference and of the agreement between McMillan and Rogers. Rogers had not spoken to her about Gately's cases since the calendar call, although he had the opportunity to do so. She, therefore, requested the court that Gately's cases be continued. Rogers stood up and insisted that he was ready for trial. When the judge asked Rogers if he had dismissed the State's witness, Rogers initially attempted to discuss the merits of the case, but eventually admitted that he had told the witness to leave.

That day or the next, Rogers contacted Gately and advised her to take out a warrant against McMillan for assault by pointing a gun. Although Gately had told Rogers that she did not remember the incident, she agreed and Rogers accompanied her to the Magistrate's Office. A warrant was taken out against McMillan, with David Rogers listed on the warrant as a witness. McMillan was then charged, taken to the police station, fingerprinted and photographed. A week later, Gately attempted to have the charges dropped because she thought it was vindictive and because she did not actually remember the event occurring.

Thereafter, Attorney Rogers was charged with illegally becoming a surety, soliciting business and obstruction of justice. After the State rested its case, defendant moved to dismiss each count and his motions were denied. The defendant put on evidence and testified on his own behalf. Essentially, defendant pled ignorance of the law at his trial. Defendant testified that he was working late on a case on the night in question and had gone over to the Magistrate's Office in the early morning hours to clarify something. He testified further that when he attempted to act as surety on Gately's bail bond, the magistrate told him: "don't you know that an attorney cannot go bond for his client?," but that Gately was not his client at that point and he wanted to do it as a friend, because he felt sorry for her. His practice was mostly civil, and he was not aware of the statute referred to by the magistrate prior to that time.

As to the events in the conference room on the morning of Gately's trial, Rogers testified that at no time was the payment of McMillan's expenses and damages conditioned on his not prosecuting the hit and run charge. Rather, defendant believed that the conversation was for the purpose of reaching a plea bargain

and settlement of the entire situation, including both the civil and criminal aspects of the Gately-McMillan incidents. Defendant testified further that, in dismissing the State's witness, he had exercised "bad judgment."

After rebuttal evidence for the State, defendant again moved for dismissal of all four counts. These motions were denied and the jury found defendant guilty of standing bond for a person not a member of the defendant's immediate family and attempting to interfere with the witness Bobby McMillan by offering to have money paid if he did not appear and testify.

## II

Defendant contends that he made a sufficient showing that he was a victim of unconstitutional selective prosecution to warrant dismissal of the indictment and charges against him. We do not agree.

## A

The test for determining the limits of constitutionally permissible selective prosecution was first expressly articulated by the United States Supreme Court in *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 2d 446 (1962). In *Oyler*, the petitioner claimed he was discriminated against because he was prosecuted and sentenced as a "habitual offender" as a result of his former Juvenile Court convictions while six other men, sentenced in the same court and subject to prosecution as habitual offenders as a result of three or more adult felony convictions, were not prosecuted as "habitual offenders." The Court first noted that the petitioner had failed to state whether the prosecutor had failed to proceed against the other three-time offenders due to a lack of knowledge of their prior offenses or as a result of a deliberate policy to proceed only in a certain class of cases or against specific persons. Finding that the allegations "set out no more than a failure to prosecute others because of a lack of knowledge" that they were subject to prosecution for the same offense as petitioner, the Court held that petitioner had not been denied equal protection under the Fourteenth Amendment. Continuing, the Court stated:

Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.

Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. Therefore grounds supporting a finding of denial of equal protection were not alleged. *State v. Hicks* [213 Or. 619, 325 P. 2d 794 (1958)]; cf. *Snowden v. Hughes*, 321 U.S. 1, [64 S.Ct. 397, 88 L.Ed. 497] (1944); *Yick Wo v. Hopkins*, 118 U.S. 356, [6 S.Ct. 1064, 30 L.Ed. 220] (1886) (by implication).[2]

368 U.S. at 456, 82 S.Ct. at 506, 7 L.Ed. 2d at 453.

Following *Oyler* and *Yick Wo*, the federal courts have generally recognized a two-part test for discriminatory prosecution similar to that stated in *United States v. Greene*, 697 F. 2d 1229, 1234 (5th Cir.), *cert. denied*, --- U.S. ---, 103 S.Ct. 3542, 77 L.Ed. 2d 1391 (1983).

To prevail on a selective prosecution challenge, a defendant must first make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not. (Citations omitted.) If a defendant meets this first showing, he must then demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*See e.g. United States v. Ness*, 652 F. 2d 890 (9th Cir.), *cert. denied*, 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed. 2d 113 (1981) (initial decision to prosecute must not be based on an "impermissible motive"); *United States v. Crowthers*, 456 F. 2d 1074 (4th Cir. 1972) (prosecution based on exercise of "First Amendment" rights is impermissible); *United States v. Wilson*, 639 F. 2d 500 (9th Cir. 1981) (prosecution based on exercise of constitutional rights is im-

---

2. In *Yick Wo* the court stated:

Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. 118 U.S. at 373-374, 6 S.Ct. at 1073, 30 L.Ed. at 227.

permissible); *Wheaton v. Hagan*, 435 F. Supp. 1134 (M.D.N.C. 1977) ("constitutionally" impermissible ground). *See generally* 45 A.L.R. Fed. 732 (1979).

[1] Our Supreme Court, following *Yick Wo*, recognized the defense under the equal protection clause of Art. I, § 19 of the Constitution of North Carolina in *Kresge Co. v. Davis*, 277 N.C. 654, 178 S.E. 2d 382 (1971). The court initially observed that the constitutional protection against unreasonable discrimination between persons in similar circumstances under color of law is not limited to the enactment of legislation, but "extends also to the administration and the execution of laws valid on their face." 277 N.C. at 660, 178 S.E. 2d at 385, *citing Yick Wo v. Hopkins, supra.* Continuing, the court distinguished unequal administration or enforcement of the law from unconstitutional discriminatory enforcement of the law.

> One who violates a law, valid upon its face, does not bring himself within the protection of the *Yick Wo* rule merely by showing that numerous other persons have also violated the law and have not been arrested and prosecuted therefor. Mere laxity, delay or inefficiency of the police department, or of the prosecutor, in the enforcement of a statute or ordinance, otherwise valid, does not destroy the law or render it invalid and unenforceable. Even selective enforcement does not have that effect if it has a reasonable relation to the purpose of the legislation, such as making efficient use of police manpower by concentrating upon the major sources of criminal activity.

*Id.* at 661, 178 S.E. 2d at 386. In deference to the need for prosecutorial discretion in weighing such factors as the likelihood of successful prosecution, the social value of obtaining a conviction as against the time and expense to the state, and the prosecutor's own sense of justice in the particular case, the court held that selectivity does not constitute a denial of equal protection unless there is shown to be present in the decision to prosecute an element of intentional or purposeful discrimination. Further, that such discriminatory purpose is not presumed; rather, the good faith of the officers is presumed and the burden is upon the complainant to show the intentional or purposeful discriminations upon which he relies. 277 N.C. at 662, 178 S.E. 2d at 386. *See also*

*State v. Spicer*, 299 N.C. 309, 261 S.E. 2d 893 (1980). The requirements of discriminatory prosecution in *Kresge* are substantially in accord with those followed in other states. *See generally* 95 A.L.R. 3d 280 (1979) and cases collected therein.

## B

In an attempt to satisfy the first part of the selective prosecution test, the defendant conducted extensive discovery to determine whether other persons have been prosecuted in the Tenth Judicial District for conduct of the type forming the basis of the charges against him. As a result of this discovery, defendant has constructed five classes and argues that he is the only one to have been prosecuted within those classes. All the classes pertain to persons engaging in the questioned conduct since the date that J. Randolph Riley took office as District Attorney in Wake County, North Carolina, and all such conduct pertains to that time frame and county. The classes are as follows:

1. All persons charged solely with misdemeanor offenses who have been prosecuted on those misdemeanors by initiation of charges in the Superior Court through the use of the statutory presentment procedure.

2. All attorneys who have signed a surety bond for a person not a member of their immediate families.

3. All attorneys charged with a criminal misdemeanor who were prosecuted originally in the Superior Court through the presentment procedure.

4. All attorneys who have, or may have, solicited legal business, directly or indirectly, in Wake County.

5. The persons who were present and actually took part in the activities involved in Counts I and III of the Indictment, out of which activities this prosecution arose.

[2]  At the outset, we may summarily dispense with consideration of classes one, three and four for the following reasons: (1) the defendant was found not guilty of improperly soliciting legal business and therefore defendant's fourth proposed class is irrelevant with respect to this appeal, and (2) defendant's proposed classes one and three relate to the *manner* in which the indictment was obtained rather than to the *decision* to seek an indict-

ment for the conduct at issue, and are therefore not at all germane to the issue of selective prosecution.[3]

[3]   Of the remaining classes, numbers two and five relate solely to the charge of having improperly signed a surety bond. Defendant's second proposed class consists of all attorneys in Wake County who signed surety bonds for persons not members of their immediate families in violation of G.S. 15A-541. Defendant's fifth proposed class consists of the defendant, Magistrate Ray, and Officer Mizelle. The defendant argues that Ray and Mizelle should have been prosecuted as aiders and abettors because they had the opportunity and duty to prevent him from signing the bond and they failed to do so. Even assuming *arguendo* that they were subject to prosecution, it is routine prosecutorial practice to refrain from prosecuting some participants in order to secure their testimony as State's witnesses against the most culpable party. Under defendant's theory all undercover agents engaged in, for example, drug operations would have to be prosecuted. We find the fifth class inappropriate. *See Bell v. State*, 369 So. 2d 932 (Fla. 1979) (failure to prosecute policemen as well as defendants for various violations of law relating, *inter alia*, to lewdness, did not constitute selective and discriminatory enforcement even though policemen upon whose evidence information was based, were guilty participants along with defendants; mere failure to prosecute all offenders is no ground for claim of denial of constitutional guarantees of equal protection).

At the hearing on his motion, defendant offered to prove that an impermissible motive underlay the decision to prosecute him, based upon the following facts: (1) he handled malicious prosecution and false arrest cases, (2) he filed two lawsuits against police officers, (3) he had an argument with Assistant District Attorney William Hart, and (4) he has incurred the wrath of the District At-

---

3. Defendant raises a number of constitutional issues relating to the fact that the prosecutor chose to bring charges against him initially in Superior Court under the presentment statutes, G.S. 15A-628(a)(4) and G.S. 15A-641(c), rather than prosecuting him originally in the District Court, from which defendant could have appealed his conviction for trial *de novo* in the Superior Court and thus secure a "second bite at the apple." Defendant also contends that the presentment statutes were not properly followed in this case and are unconstitutionally vague. We have carefully examined all of defendant's arguments regarding the initiation of charges against him under the presentment statutes and find them to be wholly without merit.

torney's staff by "handling several unpopular causes in an extremely uncongenial and uncompromising manner."

## C

[4] Although the trial court did not conduct a full evidentiary hearing[4] and take the testimony of witnesses, the court did consider defendant's proffer of proof and statements made by the attorneys which, without objection, were received as evidence. Based on these, the court made extensive findings of fact and conclusions of law that the prosecution did not result from impermissible considerations.

With regard to the first prong of the selective prosecution test, the trial court found as a fact that defendant had only shown that one other attorney in Wake County actually became a surety on a bail bond during the relevant time period and that the actions of said attorney were not called to the attention of or known by the District Attorney's Office for the Tenth Judicial District. Additionally, the court found that "no other attorneys in Wake County have been shown to have been involved in the illegal solicitation of business or in the intimidation or interference with witnesses." With regard to the second prong of the test, the trial court's key findings of fact were that the defendant's case was referred by J. Randolph Riley, District Attorney for the 10th Judicial District, to the Special Prosecutions Division of the Attorney General's Office; that the decision to prosecute the defendant was made solely by Associate Attorney General Charles Hobgood; and that no one from the 10th Judicial District District Attorney's Office suggested, persuaded, pressured, discussed, or took any action to affect the decision of the special prosecutor as

---

4. Defendant also contends that he at least made a *prima facie* showing of discriminatory prosecution and was therefore entitled to a full evidentiary hearing on his motion to dismiss the indictment. The federal courts have apparently held that a defendant must make a nonfrivolous *prima facie* showing before becoming entitled to an evidentiary hearing on a selective prosecution claim. *See e.g. United States v. Ness, supra* at 892. Similarly, in *State v. Spicer, supra,* our Supreme Court recognized that a full evidentiary hearing is not mandated by the requirements of due process in every selective prosecution case. The trial court ruled that defendant had not made a *prima facie* showing of discriminatory prosecution so as to entitle him to a full evidentiary hearing. The hearing afforded the defendant in this case met the requirements of due process and we find no error in the denial of defendant's request for a full evidentiary hearing. See discussion, *infra,* of defendant's substantive claims.

to whether the defendant should be prosecuted. Further, that no one in the District Attorney's Office acted in bad faith in referring the case to the Special Prosecutions Division; that to the contrary, the referral was made to avoid any conflict and to avoid the appearance of impropriety since one of the Assistant District Attorneys was a potential witness; and that no one in the Special Prosecutions Division acted with bad faith, vindictiveness, or discrimination in the investigation of the case and decision to proceed to the grand jury by way of presentment and indictment. The court also found that there were no facts that would indicate an impermissible motive to investigate and prosecute the case and that the ultimate decision to prosecute was made "simply, solely, exclusively, and entirely by the grand jury on the one hand and the Special Prosecutions Division on the other hand; and that these bodies were several steps removed from and independent of the District Attorney's Office for the Tenth Judicial District."

A trial court's findings of fact are conclusive on appeal if supported by the evidence, *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed. 2d 1137 (1980), and will not be reversed on appeal unless shown to be "clearly erroneous." *United States v. Wilson, supra* at 503. In the present case, the trial court's findings were supported by the evidence and are not clearly erroneous.

At the pretrial hearing, defendant's documentary evidence disclosed that only he and one other local attorney had become sureties on bail bonds during the tenure of District Attorney J. Randolph Riley. Defendant argues in effect, that in addition to this evidence, the testimony of Magistrate Ray supports a conclusion that many other attorneys in Wake County have acted as surety for non-family members in criminal cases and have not been prosecuted for doing so.

It is noteworthy that our research has disclosed *no* reported cases under G.S. 15A-541, nor the prior statutory provision it expanded upon, G.S. 15-107.1 (Repealed by Session Laws 1975, c. 166, s. 26). *See* Official Commentary, G.S. 15A-541. In addition, there are very few reported cases under G.S. 14-226. These factors, however, either alone or in conjunction with defendant's other evidence, do not establish impermissible selectivity in the

enforcement of the statutes. Furthermore, the testimony of Magistrate Ray does not support defendant's contentions.

The magistrate testified that at one time the Office had had a "problem" with attorneys attempting to sign bonds. In response, a policy was developed whereby the attorney was informed of the statutory prohibition and if he insisted upon signing the bond, he was permitted to do so, but a record would be kept for the office files. It was not "the policy" to prohibit signing, or to bring charges. However, Ray testified further that the "problem" was "more prevalent" when he first became a magistrate some 11 years prior and that today it was "very rare" to see that problem. In addition, Ray's testimony indicated that in three cases he personally handled, other attorneys had *attempted* to sign bonds, but did not ultimately do so.

At any rate, by defendant's own definition, the second proposed class is limited to attorneys who signed bonds after J. Randolph Riley became District Attorney in 1977 and that class has only two documented members. It would appear that a class of two members is too statistically small a sampling to accurately measure a claim of selective prosecution. *See State v. Spicer, supra. Compare United States v. Wilson, supra* (first part of selective prosecution test met by a showing that only two persons out of approximately 425 who filed "exempt" W-4 tax forms in Arizona were prosecuted) and *United States v. Greene, supra* (test satisfied with a showing that of the approximately 300 air traffic control specialists who failed to report for work in the Dallas-Fort Worth area, only six individuals, including the three defendants, were prosecuted). However, assuming *arguendo* that defendant has *prima facie* satisfied the first part of the test, he nonetheless failed to present evidence which convincingly shows that he was deliberately prosecuted on the basis of any impermissible ground.

First, defendant presented no evidence to show that the other attorney who became a surety on a bail bond during District Attorney Riley's tenure was called to the attention of a prosecutor. The other attorney was never questioned by a law enforcement officer or official. Moreover, the record discloses that it was *after* the discovery that the defendant had interfered with a witness, that it was discovered that defendant was surety on his

client's bond.[5] An investigation of the bond incident revealed that the defendant had become a surety *after* being warned against doing so by the magistrate. In contrast, the other local attorney never represented the principal and immediately withdrew as surety. To some extent, therefore, the other attorney and defendant were not "similarly situated."

Based upon its findings of fact, the trial court concluded that there was "no showing that others similarly situated to the defendant had not been prosecuted because of conduct of the type forming the basis of the charges against defendant and the prosecutorial failure, if any, to proceed against any such person was motivated by nothing more than a failure to have any knowledge of such acts or offenses; and that, therefore, the defendant's motion to quash should be denied." In addition, the trial court rested its decision upon two further independent and alternative grounds for denying defendant's motion to dismiss. These conclusions of law are as follows:

> 3. That as a separate, independent, and alternative ground for denying the defendant's motion to quash, there has been no showing that either J. Randolph Riley, any member of the District Attorney's Office for the Tenth Judicial District, Detective A. C. Mundy, Charles H. Hobgood or any member of the Special Prosecutions Division, or the Grand Jury discriminated against the defendant or acted in bad faith or acted with vindictiveness or selected the defendant for prosecution based on impermissible grounds such as race, religion, sex, creed, occupation, performance of members in their profession, or any other possible field of arbitrary classification whatsoever, or any constitutional rights, including but not limited to First Amendment freedom of speech considerations; and that, therefore, the defendant's motion to quash should be denied.

> 4. That as a separate, independent, and alternative ground for denying the defendant's motion to quash, that the autonomy of the actual charging authority, that is, the Grand Jury and/or the Special Prosecutions Division, as against

5. Rule 20 of the Superior and District Court Rules also prohibits an attorney from acting as surety in any case, suit, action or proceeding in which he appears as counsel. *See* General Statutes, Appendix I, Superior and District Court Rules.

whom there has been no allegational showing of any bad faith, discrimination, or vindictiveness, insulates and makes immaterial any alleged taint of bad faith, vindictiveness, or intentional discrimination on the part of any member of the District Attorney's Office for the Tenth Judicial District or any investigating officer; and, therefore, the defendant's motion to quash should be denied.

We find no error in the trial court's conclusions of law.

### D

First, it is clear that a failure to prosecute others because of a lack of knowledge that they were subject to prosecution for the same offense as defendant does not amount to a denial of equal protection under the Fourteenth Amendment. *Oyler v. Boles, supra.* Furthermore, a showing of the "mere laxity, delay or inefficiency" of the prosecutor in the enforcement of a statute does not render it unenforceable. *Kresge Co. v. Davis, supra.* Nor does a showing of mere selectivity alone entitle a defendant to prevail on his claim because it is necessary to prove that the decision to prosecute contained "an element of intentional or purposeful discrimination," *id.*; *State v. Spicer* ("intentional or deliberate discrimination"). Defendant has not made such a showing.

Although defendant stated that he believed he was prosecuted because of prosecutorial hostility engendered by his representation of clients in cases against law enforcement officers and officials, and because of particular acrimonious dealings he'd had with the District Attorney's Office, these allegations were not supported by the facts of record and reflect mainly defendant's own subjective beliefs. "Speculative and tenuous" allegations of impermissible prosecutorial motive which are unsupported by evidence of a causal link between the defendant's "hostility" provoking conduct and the decision to prosecute are insufficient to support a claim of discriminatory prosecution. *United States v. Erne,* 576 F. 2d 212, 216 n. 4 (9th Cir. 1978).

"District Attorneys have wide discretion in performing the duties of their office. This encompasses the discretion to decide who will or will not be prosecuted." *State v. Spicer, supra,* 299 N.C. at 311, 261 S.E. 2d at 895. Defendant has failed to produce factual evidence to show that but for his alleged problems with the District Attorney's Office he would not have been prosecuted.

Vindictive prosecution only requires a substantial "appearance" of vindictiveness, but selective prosecution requires a finding that the decision to prosecute was based on impermissible grounds.

*United States v. Wilson, supra,* 639 F. 2d at 503, n. 2. Defendant cannot, therefore, rely on appearances.

More importantly, defendant's allegations, even if true, are focused upon members of the District Attorney's Office. The record is clear, however, that the ultimate decision to prosecute was not made by anyone in that office, but by an independent special prosecutor. The trial court specifically found and concluded that the Special Prosecutions Division did not act in bad faith or for an impermissible motive. This finding is supported by statements of counsel and no allegation to the contrary is made. The findings of fact in turn also support the trial court's separate and alternative conclusion of law that *any possible* bad faith on the part of the District Attorney's Office was insulated when the case was referred to an autonomous charging body, the Special Prosecutions Division of the Attorney General's Office, pursuant to G.S. 114-11.6.

The special prosecutor testified that one of his duties was to try cases "where a conflict arises in the local District Attorney's Office and the local District Attorney wants to remove even the appearance of anything improper. Therefore, our value at least on my part, is not being an expert on the criminal law but rather being an outsider, someone who comes in and makes an independent judgment and this is what I have attempted to do in this case." The federal courts have recognized that referring a case to an independent prosecutor ordinarily insulates any original impermissible motive that may have existed on the part of the referring officer. *See United States v. Erne, supra,* 576 F. 2d at 216-217 (possible improper discriminatory motive on part of the initial IRS agent prior to referral was insufficient to taint entire administrative process). *See also United States v. Gervasi,* 562 F. Supp. 632 (N.D. Ill., E.D. 1983) (alleged vindictiveness on the part of initial state prosecutors is not attributable to subsequent federal prosecutors).

In summary, the defendant has failed to carry his burden of either showing that he was singled out for prosecution or that an

invidious purpose invaded or overrode the prosecutorial decision to seek a presentment and indictment against him. Accordingly, the trial court correctly denied defendant's motion to dismiss the indictment on the basis of selective and discriminatory prosecution.

### III

[5] Defendant also challenges the trial court's denial of his motion to quash and dismiss the superseding indictment on the ground that it was obtained as a result of impermissible prosecutorial vindictiveness in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Defendant argues that the addition of a fourth count in the superseding indictment increased the charges against him and increased his potential punishment, thereby entitling defendant to a presumption of prosecutorial vindictiveness. Defendant argues further that the presumed vindictiveness, or appearance of vindictiveness, was not satisfactorily countered or explained by the prosecutor and that he is therefore entitled to have his conviction vacated and the charges dismissed. We do not agree.

### A

First, the defendant's claim of vindictiveness depends upon acceptance of his characterization of the superseding indictment as imposing *additional* charges and subjecting him to *increased* punishment. However, the record does not support this claim. As to punishment, the trial court ruled that Counts III and IV, intimidating and interfering with a witness, would be considered to be one offense for the purposes of trial. Later, the trial court instructed the jury and framed the issues so that the jury could find the defendant guilty of no more than one offense. Therefore, the defendant was not subjected to increased punishment as a result of the second indictment.

Furthermore, the record reveals that defendant moved to dismiss Count III of the original indictment pursuant to G.S. 15A-954(a)(10) and G.S. 15A-952(d) for failure to state an offense as required by G.S. 15A-924(a)(5). In essence, that statutory provision requires that a criminal pleading contain a "plain and concise" factual statement in each count which asserts facts supporting every element of the criminal offense with sufficient precision to apprise

the defendant of the conduct which is the subject of the accusation. Although original Count III failed to allege specific facts in support of the elements of the offenses charged, it did allege that defendant "did unlawfully, willfully and intentionally *attempt to interfere with*, attempt to deter, *attempt to intimidate*, attempt to prevent and *did interfere with*, deter, *intimidate*, and prevent" witness Bobby McMillan from attending and testifying in court in violation of G.S. 14-226, "intimidating or interfering with witnesses." Moreover, it is clear that the real problem with original Count III lay not in its failure to state an offense, but rather in the fact that it stated four separate offenses (two acts of attempt and two acts of commission) in a single count, and was therefore properly subject to quashal and dismissal. *See* G.S. 15A-924(b) (a duplicitous count is subject to a defendant's motion to dismiss if, *inter alia*, the state fails to make a timely election). In other words, the prosecutor included *all* of the potential charges against defendant stemming from his conversation with witness McMillan on 19 August 1982 in the original indictment, and the superseding indictment contained no new or additional charge of a criminal offense that was not originally alleged.

Where a motion to quash is granted, the defendant is not entitled to a discharge, but is subject to further prosecution on a new indictment. *State v. Barnes*, 253 N.C. 711, 117 S.E. 2d 849 (1961). The trial court's order of dismissal forced the prosecutor to review the facts and the law and decide whether to seek a second and more perfectly drawn indictment. The special prosecutor testified that, upon review, he thought that Count III "might be possibly duplicitous and that is the reason I put [it], therefore, in the two separate counts." He characterized his motive as "an attempt to be very very careful in pleading. Your Honor has [sic] just quashed the . . . third count of the indictment and I certainly did not want to have that count quashed a second time. It would not have looked good for the State, therefore, I tried very hard to draft this as carefully as I could to pass mustard [sic]."

Nothing else appearing, it is entirely proper for the prosecutor to seek a second and more perfect indictment. *State v. Moffitt*, 9 N.C. App. 694, 177 S.E. 2d 324 (1970), *cert. denied*, 281 N.C. 626, 190 S.E. 2d 472 (1972). The gist of the offense under G.S. 14-226 is the obstruction of justice. *State v. Neely*, 4 N.C. App. 475, 166 S.E. 2d 878 (1969). As explained to the trial court, the

prosecutor concluded that G.S. 14-226 prohibited two distinct offenses — (1) intimidating and (2) interfering with witnesses. The allegations contained in original Count III were then divided into two counts in order to avoid any possibility of having the second indictment quashed on the ground of duplicity. "Ordinarily, an indictment which charges two separate offenses in a single count is bad for duplicity." *State v. Beaver*, 14 N.C. App. 459, 461, 188 S.E. 2d 576, 578 (1972). Provided that the charges were originally set out in the defective indictment, the prosecutor may upon motion and leave of court amend the indictment and state the charges upon which he desires to proceed at trial in separate counts. *Id.*; *State v. Williamson*, 250 N.C. 204, 108 S.E. 2d 443 (1959). Essentially, this is what occurred in the case under discussion, and under the circumstances, defendant has shown neither an increase in the number of charges brought against him nor an increase in his potential punishment under the superseding indictment.

## B

Second, even if defendant had been subjected to additional charges and increased punishment under the superseding indictment, he has demonstrated no denial of due process. Defendant has neither alleged actual vindictiveness nor shown himself to be entitled to a presumption of prosecutorial vindictiveness under current constitutional doctrine. As was aptly stated in *United States v. Gallegos-Curiel*, 681 F. 2d 1164, 1167 (9th Cir. 1982):

> The doctrine of vindictive prosecution must not be misapplied by blurring the distinction between what is actual retaliation and what is presumed. The presumption applies only to the extent it reflects the very real likelihood of actual vindictiveness.

The doctrine of presumed vindictiveness was first developed in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed. 2d 656 (1969), in recognition of the fact that the existence of a retaliatory motive in any particular case would be extremely difficult to prove. There the Court acknowledged that due process guarantees that a defendant may not be punished for successfully challenging his conviction, and in order to assure the absence of such a retaliatory motivation, held that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the

reasons for doing so must appear. If no such objective reasons appear in the record, vindictiveness can be presumed.

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed. 2d 628 (1974), the Court considered the presumption of vindictiveness in the context of prosecutorial behavior. There the defendant was convicted of a misdemeanor in District Court. He then appealed to the Superior Court. Before his misdemeanor trial de novo was held, the prosecutor obtained a felony indictment against the defendant, covering the same conduct charged in the misdemeanor warrant. The Court observed that under the two-tier system the prosecutor has a considerable stake in discouraging convicted misdemeanants from appealing and obtaining a trial de novo, and that the opportunities for vindictiveness presented thereby were such "as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." 417 U.S. at 27, 94 S.Ct. at 2102, 40 L.Ed. 2d at 634. In so ruling, the Court emphasized that

> the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness."

*Id.*

The availability of the presumption of vindictiveness in the context of pretrial proceedings was definitively addressed by the Supreme Court in *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed. 2d 74 (1982). There, the defendant requested a jury trial on pending misdemeanor charges after unsuccessful plea negotiations with the prosecutor. After the case was assigned to an Assistant United States Attorney, the defendant was indicted and convicted on a felony charge. He alleged vindictive prosecution. The Supreme Court analyzed the timing and nature of the right which the defendant had exercised, concluded that the circumstances did not present a realistic likelihood of vindictiveness and held that a presumption of vindictiveness was not warranted in that pretrial setting.

First, the Court cautioned against adopting an inflexible presumption of prosecutorial vindictiveness in any pretrial setting.

State v. Rogers

In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystalized. In contrast, once a trial begins — and certainly by the time a conviction has been obtained — it is much more likely that the state has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

457 U.S. at 381, 102 S.Ct. at 2493, 73 L.Ed. 2d at 85. The Court continued:

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

*Id.* at 481, 102 S.Ct. at 2493, 73 L.Ed. 2d at 85-86.

After considering the timing of the defendant's action, the *Goodwin* court analyzed the nature of the rights asserted — the not guilty plea and request for a jury trial — and concluded that these did not force the duplicative expenditure of prosecutorial resources as did the asserted rights in *Pearce* and *Blackledge*. In those cases, it was feared that the institutional bias against the retrial of decided issues and the possibility that a formerly convicted defendant might go free might motivate a retaliatory or vindictive reaction. The same considerations were not implicated by the pretrial plea of not guilty and request for a jury trial.

Following the standards established in *Pearce, Blackledge* and *Goodwin*, the Ninth Circuit Court of Appeals, in *United States v. Gallegos-Curiel, supra*, stated the rule as follows:

> When there is no evidence of actual vindictiveness and the only question is whether it must be presumed, cases involving increased charges or punishments after trial are to be sharply distinguished from cases in which the prosecution increases charges in the course of pretrial proceedings.
>
> ＊          ＊          ＊
>
> In every case alleging inferred vindictive prosecution, there must be a threshold showing of vindictiveness or the likelihood of it before the court is justified in inquiring into the prosecutor's actual motives. The exercise of routine or clearly necessary defense motions in the pretrial stage does not meet the threshold for more detailed inquiry and does not suffice to raise the presumption of vindictiveness.

681 F. 2d at 1167, 1169.

Defendant Rogers contends that he is entitled to the presumption of prosecutorial vindictiveness because the second indictment, with its increased number of charges, was not brought as a result of any newly discovered evidence but simply as an immediate reaction to the defendant's successful exercise of his statutory right to move for dismissal of one of the counts of the original indictment. Defendant contends, therefore, that this was "an obvious attempt to reinstate the charges which the court had just the day before dismissed" and that the promptness of the action itself "indicates the motives of the prosecution." Finally, defendant argues that the explanation given by the special prosecutor for the increased number of counts in the second indictment was inadequate to dispel the appearance of vindictiveness.

Obviously, promptness alone does not demonstrate "vindictiveness." Furthermore, as we stated above, it was entirely proper for the prosecutor to seek a second and more expertly drafted indictment upon dismissal of the third count of the first indictment for pleading defects. *See State v. Barnes, supra; State v. Moffitt, supra* and *State v. Williamson, supra*. Moreover, as the Supreme Court stated in *Goodwin*, it is unrealistic to assume, as

defendant would have us do, that the prosecutor's *probable* response to the defendant's routine filing of a pretrial motion challenging the sufficiency and form of an indictment was to seek to penalize and deter. As the *Goodwin* court observed:

> To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible — an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.

457 U.S. at 382 n. 14, 102 S.Ct. at 2493, 73 L.Ed. 2d at 86.

Additionally, it must be remembered that nothing else appearing, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Goodwin, supra* at 384, 102 S.Ct. at 2494, 73 L.Ed. 2d at 87. The presumption applies only where the *realistic* likelihood of actual vindictiveness is clearly demonstrated by circumstances such as existed in *Pearce* and *Blackledge*. Here, to the contrary, defendant's pretrial motion "is an integral part of the adversary process in which our criminal justice system operates." *United States v. Goodwin, supra.* Under these circumstances, no realistic likelihood of prosecutorial vindictiveness has been demonstrated and a presumption of vindictiveness is wholly unwarranted. The defendant, therefore, has not shown a denial of due process in the bringing of his case to trial.

## IV

Next, defendant contends that the trial court erred by denying defendant's motions to dismiss Counts I and IV made at the close of the State's evidence and at the close of all the evidence. Inasmuch as the defendant elected to offer evidence he is deemed to have waived his motion to dismiss Counts I and IV at the close of the State's evidence and may only challenge denial of the motion to dismiss at the close of all the evidence. *State v. Leonard*, 300 N.C. 223, 266 S.E. 2d 631, *cert. denied*, 449 U.S. 960, 101 S.Ct. 372, 66 L.Ed. 2d 227 (1980).

> In ruling on a motion to dismiss the trial court is to consider the evidence in the light most favorable to the State. (Citation omitted.) In so doing, the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do

not warrant dismissal of the case—they are for the jury to resolve. *Id.* The court is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State. *Id.* The defendant's evidence, unless favorable to the State, is not to be taken into consideration. (Citations omitted.) However, when not in conflict with the State's evidence, it may be used to explain or clarify the evidence offered by the State. *Id.* In ruling on the motion, evidence favorable to the State is to be considered as a whole in determining its sufficiency.

*State v. Earnhardt,* 307 N.C. 62, 67, 296 S.E. 2d 649, 652-653 (1982).

### Count I

Count I of the superseding indictment charged, in substance, that the defendant, a licensed attorney, had stood bail bond for a person not a member of his immediate family, in violation of G.S. 15A-541. Defendant admits that the evidence proved (1) that the defendant was on the date in question an attorney licensed to practice law in North Carolina, (2) that the defendant became a surety on a bail bond for Paula Ann Gately, and (3) that Paula Ann Gately was not a member of the defendant's immediate family. However, defendant argues that in addition to these three elements, the State must show (4) that the defendant knew there was a law prohibiting him from becoming a surety and (5) that the defendant intended to break the law.

It is defendant's contention that the State failed to prove that "defendant understood that the law in question was written to prevent him from signing bonds for anyone not a member of his immediate family" because Magistrate Ray testified on direct examination that he told defendant that an attorney could not sign bonds for "defendants" and on cross-examination that an attorney couldn't go bond for a "client." Further, that the evidence as a whole showed that at the time defendant signed the bond, "he mistakenly but in good faith believed that the statute allowed him to act as he was doing." We find defendant's argument to be without merit.

[6] With respect to defendant's fourth proposed element, ignorance of the law, if it were to be considered at all, would

theoretically be a defense and not an element of the crime. Thus, the State did not have to prove that defendant was aware of the law to make its case. In any event, it is axiomatic that "ignorance or mistake of law will not excuse an act in violation of the criminal laws." 21 Am. Jur. 2d, Criminal Law § 142, p. 278 (1981). *See also* 22 C.J.S., Criminal Law § 48 (1961). Therefore, defendant's claim is legally without basis (as well as being utterly preposterous) because ignorance of the law is not a valid defense.

Factually, defendant fares no better because the magistrate twice informed the defendant and put the defendant on notice that there was at *least* a legal "problem" with *an attorney* signing the bail bond. Any purported discrepancies in Magistrate Ray's testimony regarding the prohibition's application to "clients" or "defendants" are (1) not properly considered in testing the sufficiency of the State's evidence, *State v. Earnhardt, supra* and (2) not relevant under G.S. 15A-541 whose prohibition applies to non-family members. Moreover, defendant refused the Magistrate's offer to read the statute, stating that he was "aware" of it. It defies belief that the defendant would first willfully attempt to remain in ignorance of the law and then invoke this alleged ignorance in his defense. Thus, there is absolutely no merit in defendant's claim regarding "ignorance of the law."

Defendant's fifth proposed element, "intent to break the law," would appear to be, in part, a rephrasing of his fourth element regarding ignorance of the law, and in that respect, his contention is without merit. As to a mental state requirement itself, G.S. 15A-541 provides simply that "No . . . attorney . . . may in any case become surety on a bail bond for any person other than a member of his immediate family." As we noted earlier, there are no reported cases involving violations of G.S. 15A-541.

[7] Although the statute itself does not state that the act must be done "intentionally" or "willfully," the indictment under which defendant was tried did contain such language. In addition, the jury was instructed as to the first count as follows:

> Fourth, that at the time the defendant became a surety for Paula Ann Gately, if you find that he did so, that he did so while knowing that there existed a law prohibiting his doing so . . .

. . . and that the defendant did so knowingly and intentional-
ly . . .

We conclude that the mental state required under G.S. 15A-541 is
nothing more than the general intent to do the proscribed act;
that is, for the attorney to intend or knowingly to become surety
on a bail bond for any person other than a member of the at-
torney's immediate family. The language in the jury instruction
regarding "knowledge that there existed a law prohibiting his do-
ing so" must be considered mere surplusage.

The rationale behind the prohibition of a statute such as G.S.
15A-541 was well stated in an early case from South Dakota.

> Attorneys and counselors at law are officers of the court, and
> the object of the statute evidently was to disqualify them
> from becoming sureties, not only in suits in which they might
> be retained as attorneys or as counsel, but in all cases pend-
> ing in the courts; and thereby relieve them, not only from the
> importunities of their own clients to become sureties in suits
> in which they were attorneys, but from the solicitation of
> other attorneys or persons whom they might feel a delicacy
> in refusing. As officers of the court, it was deemed proper to
> protect them from becoming *quasi* principals in any litigation
> before the courts in which they were not directly interested
> as parties.

*Towle v. Bradley*, 2 S.D. 472, 50 N.W. 1057, 1058 (1892).

[8] In the case under discussion, there was ample evidence of in-
tent to overcome defendant's motion to dismiss. There is no ques-
tion that defendant knowingly and of his own free will signed the
bail bond for Paula Ann Gately, to whom he was not related. In
addition to testifying that he informed Rogers that the General
Statutes prohibited attorneys from signing bail bonds for defend-
ants and that Rogers nevertheless stated his intention to proceed,
Magistrate Ray testified as follows:

> A. Well, the, the policy that I have at the Magistrate's Office
> is that once you inform an attorney what the statute is and
> he wants to put the bond in his name, I do that. The reason
> for it —
>
> Q. Okay —

COURT: Let him finish his answer.

A. —Is so there won't be any argument in the courtroom. I don't have a law degree. I don't argue with a lawyer. *I inform him and let him be aware of the violation and if he insists on having it in his name, then I go ahead and do it, make a copy of it for my file.* We had similar cases and that's why this is the policy that I use. (Emphasis added.)

The defendant's conviction on Count I is clearly supported by the evidence presented.

### Count IV

[9]    The evidence, taken in the light most favorable to the State, including all of the evidence admitted, whether competent or incompetent, and so much of the defendant's evidence that clarifies the State's evidence, *State v. Earnhardt, supra,* is also sufficient to support the defendant's conviction on Count IV, attempting to interfere with a State's witness. First, defendant indicated his belief to both Officer Mizelle and Assistant District Attorney Dombalis that the case would have to be dismissed if the witness (McMillan) did not arrive. When McMillan did arrive, the defendant muttered "shit" and immediately summoned his client, McMillan and Officer Mizelle into the conference room. These three parties, McMillan, Gately and Mizelle, all testified to the effect that Rogers, Gately and McMillan reached an "agreement" that Ms. Gately would pay for all of the damages incurred on the night of the accident if McMillan would agree not to press charges. Further, that since McMillan would no longer be needed, he could leave the courthouse. McMillan also testified that defendant "said he had a good chance of getting it [the DUI case] throwed out" because the police had never seen Ms. Gately drive while she was under the influence of alcohol.

The Assistant District Attorney testified that after McMillan returned to the courtroom, she asked him what had happened:

. . . and he said that Mr. Rogers, the defendant in this case, Ms. Gately, Mr. McMillan and himself had worked out some kind of an agreement where the damages would be dismissed, or that Mr. McMillan's damages would be paid for and he wouldn't testify and all the charges would be dropped.

Detective Munday testified from his present recollection that when he interviewed the defendant:

In the conversation he admitted to me that in the conference room that he offered to pay Bobby McMillan's hospital bill, any damages to his vehicle if he would drop the charges.

Further, that McMillan, upon interview, told Munday the following:

He stated to me that Rogers told him that he would pay for his damages to his vehicle. Also, he would pay for the hospital bill if he would agree not to press charges.

Finally, defendant's own testimony establishes his attempt to reach an agreement with McMillan concerning Gately's cases and his only excuse for dismissing the State's witness on his own accord was "bad judgment" on his part.

Defendant was convicted only of attempting to interfere with a witness in violation of G.S. 14-226. An attempt is an overt act in partial execution of a criminal design which falls short of actual commission but which goes beyond mere preparation to commit. *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866 (1971). In the present case, the witness had second thoughts and returned to the courtroom. The defendant's actions and statements considered as a whole, however, constituted overt acts designed to induce the State's witness to leave so that defendant could obtain a dismissal of both the DUI and hit and run charges against his client, Paula Ann Gately. It is clear that the defendant had no authority to either dismiss the State's witness or to negotiate a dismissal for the criminal charges pending against Gately. The District Attorney, who is a constitutional officer, N.C. Const. Art. IV, § 18 (Cum. Supp. 1983), is the only person authorized to dismiss a criminal charge in this context. *State v. Furmage*, 250 N.C. 616, 109 S.E. 2d 563 (1959). It is abundantly clear from the evidence presented that defendant's efforts on behalf of Ms. Gately went far beyond representing his client "zealously within the bounds of the law," *see* Code of Professional Responsibility, Canon 7, and constituted a direct attempt to interfere with a State's witness who was under subpoena to testify in a named case. Therefore, the issue was properly submitted to the jury and defendant's conviction on Count IV must be upheld.

## V

**[10]** Defendant's final arguments concern the terms of the sentence he received for his criminal convictions and the court's simultaneous entry of a civil order imposing the identical terms of discipline under the court's inherent authority to discipline attorneys.

The defendant received the maximum sentence of six months imprisonment for violating G.S. 15A-541 and the maximum sentence of two years imprisonment for violating G.S. 14-226. No fines were imposed, both sentences were suspended and defendant placed on unsupervised probation for five years. The court imposed seven conditions of probation; defendant makes no objection to the first five conditions, but contends that conditions six and seven are improper and impermissible. We disagree.

The two contested probationary conditions are as follows:

(6) The defendant, this date, is to surrender his North Carolina Law License and Identifying Card to the North Carolina State Bar for eighteen (18) months. This eighteen (18) months revocation and suspension of license may be reduced to as little as six (6) months if the defendant satisfies the State Bar that he has (a) moral qualifications, competency and learning in the law within the range of competency demanding of attorneys by law in Civil and Criminal cases, (See *State v. Vickers*, 306 N.C. 90, 1982). (b) Satisfy the North Carolina State Bar that his physical and mental condition is such that it does not interfere with his handling of cases and advising clients.

(7) The defendant is not to engage in the practice of law or hold himself out as an attorney during the period of revocation and suspension.

These two conditions are permitted by G.S. 15A-1343(b)(17), which provides:

(b) Appropriate Conditions.—When placing a defendant on probation, the court may, as a condition of the probation, require that during the period of probation the defendant comply with one or more of the following conditions:

* * *

(17) Satisfy any other conditions reasonably related to his rehabilitation.

Although defendant contends that the revocation and suspension of his law license is not reasonably related to his rehabilitation, the probationary judgment itself indicates otherwise. The terms show that defendant could reduce his license suspension to as little as six months if he satisfies the State Bar as to his competency to resume the practice of law with regard to his moral qualifications, competency, legal knowledge and physical and mental condition.

The record of defendant's sentencing hearing shows the trial court's evident and justifiable concern that the defendant was lacking in the areas of legal learning, knowledge, competency and the moral qualifications demanded of attorneys in civil and criminal cases and that the public needed to be protected pending his rehabilitation. The record in this case amply supports the court's concern. The defendant was convicted of attempting to interfere with a witness in violation of G.S. 14-226, the gist of which has been termed the "obstruction of justice." *State v. Neely, supra.* He was also convicted of violating G.S. 15A-541, which is directed towards officers of the court. Defendant's defense of ignorance of the law, "bad judgment" and his actions in advising Paula Ann Gately to prosecute a legal action against Bobby McMillan when there was no legal or factual basis for the action demonstrate a marked lack of legal competence, if not moral disqualification for the practice of law. The other terms of probation are equally well supported by the testimony at defendant's trial. Thus, the suspension of defendant's law license is reasonably related to his conduct and his rehabilitation.

> It has long been the accepted rule in North Carolina that within the limits of the sentence authorized by law, the character and the extent of the punishment imposed is within the discretion of the trial court and is subject to review only in cases of gross abuse.

*State v. Goode,* 16 N.C. App. 188, 189, 191 S.E. 2d 241, 241-242 (1972). The defendant has shown no abuse of discretion, gross or otherwise, in the trial court's sentence. Inasmuch as we find no abuse of discretion in the probationary judgment imposed for defendant's criminal violations, we deem it unnecessary to ad-

dress the issues directed toward the identical terms of the court's civil disciplinary order.

## VI

Defendant presents a number of other questions for review concerning, *inter alia*, the trial court's evidentiary rulings and the destruction of the original tape recording of his interview by Detective Munday. We have carefully reviewed these and other issues defendant has attempted to raise in the context of his various arguments and find them to be without merit.

We conclude, therefore, that defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge VAUGHN and Judge WEBB concur in the result.